OPINION
{¶ 1} The Non-Employees of Chateau Estates Resident Association, an unincorporated association of several residents of the Chateau Estates, Ltd., mobile home park, along with numerous residents of the mobile home park (hereinafter collectively referred to as "the Association"), appeal from a judgment of the Clark County Municipal Court. The municipal court ordered that a water filtration system be installed at Chateau Estates by December 31, 2004, awarded $10,000 in attorney fees to the Association, approved a temporary rent reduction for the purchase of bottled water, and clarified water testing procedures (Municipal Court Case No. 2001-CVH-1647). The Association also appeals from a judgment of the Clark County Court of Common Pleas, which granted a motion to dismiss the Association's complaint alleging the fraudulent transfer of Chateau Estates's assets (Clark County Court of Common Pleas Case No. 2004-CV-0107). We consolidated these cases for purposes of appeal.
 {¶ 2} The history of the cases is as follows:
 {¶ 3} The Association has been involved in a dispute with the owners of Chateau Estates since 2001 regarding conditions in the park. The alleged deficiencies included deteriorating streets, vermin, pests and stray animals, poor maintenance and interruption of water service, deterioration and failure to remove vacant homes, and lack of recreational areas. When a letter stating these concerns failed to yield any response, the Association filed a complaint in the Clark County Municipal Court in May 2001 (Case No. 2001-CVH-1647). The Association also began to deposit monthly lot rental monies with the Municipal Court Clerk.
 {¶ 4} A magistrate in the trial court found that Chateau Estates had failed to maintain the park's water system, as required by R.C. 3733.10, and that the levels of iron and arsenic in the park's water were toxic to humans. The magistrate found no other violations. Thereafter, the Association sought attorney fees in excess of $70,000, pursuant to R.C. 3733.11(I). After a hearing, the magistrate awarded $8,100 in attorney fees. Both parties filed objections.
 {¶ 5} The trial court agreed with the magistrate's conclusions and found its award of attorney fees to be reasonable. In addition, the trial court ordered Chateau Estates to pay the Association for the costs incurred in testing the water prior to trial. Further, the trial court ordered that Chateau Estates test the water on a regular basis and, if the iron or arsenic content rose above acceptable levels, that it provide water that was safe for human consumption until the content returned to acceptable levels. The court ordered that rent be deposited with the court until Chateau Estates entered into a contract to "tie into a municipal water system." Both parties appealed.
 {¶ 6} On appeal, we found that the trial court's order was "somewhat vague" with regard to both the frequency of water testing and the method by which Chateau Estates was required to provide alternate water. Non-Employees of Chateau EstatesResident Assn. v. Chateau Estates, Ltd. (May 16, 2003), Clark App. No. 2002-CA-68, 2003-Ohio-2514 ("Chateau Estates I"). We noted that the court's order did not provide a specific time frame for testing the water or for making improvements to the system. Additionally, we noted that some type of immediate relief was necessary, such as providing an alternate source of water or disbursing funds from the escrow account to permit the residents to purchase bottled water, but that the court's order was not clear as to the prescribed remedy. Id. We remanded to the trial court "with instructions to enter an order specifying the terms of testing the water, for remedying the underlying problem, and for providing short-term, immediate relief to the residents." Id.
 {¶ 7} We also addressed the award of attorney fees, which the Association claimed to have been unreasonably low and disproportionate to the amount of time spent prosecuting its claims. We noted that the trial court did not explain its award, but that it appeared that the amount sought by the Association might "have been reduced to represent the fact that the Association was awarded judgment with regard to only one [of several] of its claims." We observed that such a method of arriving at an award of attorney fees would have been erroneous "given the fact that the overwhelming majority of the time and attention of counsel in this case and at trial was devoted to the water safety issues" on which the Association prevailed. Because we could not determine the manner in which the attorney fees had been calculated, we remanded for reconsideration of that issue, noting that "it would appear that $8,100 is indeed a low amount to award for a complex case that included five days of trial and numerous hours of discovery." Id.
 {¶ 8} On remand, the matter was again referred to the magistrate. The magistrate conducted a hearing in November 2003, after which it issued an order providing for monthly testing of the water on ten lots in Chateau Estates and a $13 rent rebate per person per month for the purchase of bottled water. The trial court concluded that the magistrate's order was "correct," but that it did not establish definitive time lines. Therefore, the trial court ordered the following: 1) that the water at Chateau Estates be tested monthly for compliance with acceptable levels of iron and arsenic; 2) that the cost of water testing be paid from the rental monies on deposit with the clerk of courts; 3) that Chateau Estates install ten exterior valves to facilitate testing; and 4) that Chateau Estates immediately provide an alternative source of water via a rent reduction of $13 per person for the purchase of bottled water. With respect to a long term solution, the trial court ordered Chateau Estates to provide by December 1, 2003, an estimate for the cost of installing a filtration system that would lower arsenic and iron content to an acceptable level and to provide copies of a federal EPA pilot program in which Chateau Estates might participate as an alternative to filtration by December 15, 2003. The court further ordered that "a final permanent supply of potable water shall be made available to the [residents] on or before December 31, 2004." The parties agreed to decide the issue of attorney fees separately.
 {¶ 9} At the hearing on attorney fees, the Association sought $60,116.50.[1] Expert testimony was offered that a reasonable fee for a landlord/tenant action would be $150 per hour for lead counsel, $100 per hour for associate counsel, and $75 per hour for non-attorney law clerks. Expert testimony was also presented that experienced environmental attorneys in the area would charge $170 to $225 per hour and that associates would charge $130 per hour. The fees charged by the Association's attorney were within the range for environmental attorneys: $190 to $200 per hour for the lead attorney, and $110 to $120 for the associate. The magistrate concluded, however, that "[t]his is basically a landlord/tenant action," that it was conducted in the municipal court, and that it was handled by court personnel "normally involved in forcible entry and detainer actions." The magistrate stated that this was "not a complex environmental law case" because the Association "simply had to show water tests in excess of the recommended maximum contaminant level for iron and maximum contaminant level for arsenic to prove a violation" of R.C. 3733.10, which required a manufactured home park to provide and maintain a safe water system. The magistrate concluded that the type of case presented by the Association "require[d] no great training or experience on behalf of the practitioner above that of the general practitioner. In fact, [the Association's] attorneys made no claim to having training, expertise or experience in the area of environmental law." Thus, the magistrate concluded that $150 per hour was a reasonable fee for the Association's lead attorney and that $110 to $120 per hour was reasonable for the associate. He refused to award attorney fees for the services of the non-attorney law clerk. By deducting the law clerk charges and the rates in excess of the prescribed amounts from the $60,116.50 in requested attorney fees, the magistrate determined that the remaining amount requested was $52,083.90.
 {¶ 10} The magistrate then discussed the five issues about which the Association presented evidence: maintenance of the water system; deteriorating pavement; pests, vermin and stray animals; vacant homes; and recreational facilities. The magistrate determined that all five of these issues were researched and addressed at trial, and that "hindsight" should not be allowed to distort the emphasis placed on the water system at trial. He concluded that the Association expended "substantial effort into developing evidence on the * * * four issues" unrelated to the water system. He concluded that there were "definite reasons not to hold [Chateau Estates] responsible for a large portion of the attorneys' fee incurred." The magistrate divided the $52,083.90 adjusted fee request by five, for the five issues presented, to arrive at a "rough calculation" of $10,416.78 per issue. Using that calculation and expert testimony that typical attorney fees for a five-day municipal court trial would be "in the neighborhood of $10,000," the magistrate awarded attorney fees in the amount of $10,000.
 {¶ 11} While the issue of attorney fees was pending, the Association filed a complaint in the Clark County Court of Common Pleas alleging that Chateau Estates had fraudulently transferred the real estate upon which the park was located to Helen, LLC, and its principals, without the payment of adequate consideration (Case No. 2004-CV-0107). The Association alleged that Chateau Estates remained in possession and control of the property and that the transfer was intended to "hinder, delay or defraud Plaintiff's ability to obtain relief for the condition of the drinking water at the Park." Chateau Estates moved to dismiss the complaint for failure to state a claim upon which relief may be granted and attached an affidavit to its motion. The affidavit from Albert J. Turner, III, primarily addressed the financial standing of Chateau Estates. The trial court sustained the motion to dismiss, relying on the complaint and the "uncontroverted affidavits." The court stated that the Association's concerns about Chateau Estates's financial ability to correct the hazardous water condition were "speculative" and that any violation of the municipal court order should be enforced through that court.
 {¶ 12} The Association raises seven assignments of error on appeal from the judgments of the municipal court and the court of common pleas.
 {¶ 13} "The Municipal court erred by failing to provide appellants with an adequate remedy for the condition of the park's drinking water."
 {¶ 14} The Association contends that the trial court abused its discretion by "indicating that it would close the Park after December 31, 2004, if the water quality issue was not resolved" and by failing to order Chateau Estates to connect to a municipal water system. The Association relies on R.C. 3733.12, which allows a court to order a manufactured home park operator to remedy any defective conditions.
 {¶ 15} In Chateau Estates I, we ordered the trial court to clarify the remedy set forth in its prior decision. We did not mandate that it adopt a particular remedy, nor did we require the court to hear additional evidence on the alternative remedies. The Association contends that, because Chateau Estates's own expert testified that connecting the park to a municipal water system would be the most effective solution to the water problem, the trial court should have been required to adopt this approach. We disagree. Effectiveness is only one of the factors to be considered, albeit an important one. It is undisputed that the cost of connecting to a municipal water system is quite high, and perhaps prohibitive.
 {¶ 16} As the Association correctly points out, R.C. 3733.12
permits a court to order a manufactured home park operator to remedy any defective conditions. It does not, however, require a particular remedy, nor did we require a particular remedy inChateau Estates I. We left this matter to the trial court's discretion, and we are unconvinced that the trial court has abused its discretion by considering filtration as an alternative to connecting with a municipal water system. Moreover, we find no support in the record for the Association's claim that the trial court intends to close Chateau Estates if the water condition is not remedied by December 2004, which the Association has used to leverage the importance of an immediate, "effective" remedy, such as a connection to a municipal water system.
 {¶ 17} The first assignment of error is overruled.
 {¶ 18} "The municipal court erred by failing to provide appellants with justice without denial or delay in violation of article I, section 16 of the ohio constitution."
 {¶ 19} The Association claims that the trial court unnecessarily delayed the proceedings on remand by failing to hold a hearing for over five months and that, when it did hold a hearing, it failed to provide immediate relief for water usages such as laundry and bathing. The Association also complains that it was not allowed to present evidence at the hearing. For these reasons, the Association claims that it was denied justice, in violation of Article I, Section 16 of the Ohio Constitution.
 {¶ 20} We issued our decision in Chateau Estates I in May 2003, whereupon the Association filed an application for reconsideration and for costs. Shortly thereafter, Chateau Estates filed a motion to certify a conflict and a notice of appeal to the Supreme Court of Ohio. We denied the application for reconsideration on July 15, 2003. We also refused Chateau Estates' request to certify a conflict. Chateau Estates obtained a stay from the supreme court on July 30, 2003, but the supreme court declined to hear the case on September 10, 2003.Non-Employees of Chateau Estates Resident Assn. v. ChateauEstates, Ltd., 99 Ohio St.3d 1546, 2003-Ohio-4671,795 N.E.2d 684. The trial court conducted its hearing pursuant to our remand in November 2003.
 {¶ 21} In light of the parties' various filings subsequent to the issuance of our opinion in May 2003, we cannot conclude that the trial court acted improperly or delayed justice by conducting its hearing in November 2003. Under the circumstances, the hearing was timely.
 {¶ 22} The Association also argues that the trial court erred on remand in failing to provide immediate relief to the residents for household uses of water such as bathing and laundry. The immediate relief that was ordered — a rebate in rent to reflect the need to purchase bottled water — did not cover these other uses.
 {¶ 23} The trial court's original order required Chateau Estates to provide safe drinking water to the Association until it could be established that the water at the park was safe for human consumption. This order did not provide for water for uses other than consumption, and the Association did not object to this limitation on appeal. In Chateau Estates I, we observed: "It appears from [the trial court's original order] that the trial court did intend to provide immediate relief to the Association members. However, we agree that the order is somewhat vague with regard to both the frequency of the testing to be performed on the water, as well as to the method by which the owner is required to provide alternate water. * * * Some type of immediate relief is necessary, whether that relief is the providing of an alternate source of water or simply disbursing funds from the escrow account to permit the residents to purchase bottled water." Thus, our order on remand was also limited to clarifying the manner in which water would be provided for consumption. Because the Association did not raise this issue in its prior appeal, we find no error in the trial court's failure to expand its order on remand so as to cover additional uses.
 {¶ 24} The second assignment of error is overruled.
 {¶ 25} "The municipal court erred by failing to apply the rent reduction effective May 1, 2001."
 {¶ 26} The Association claims that Chateau Estates residents should have received a $13 per person per month rent reduction to apply toward the purchase of bottled water from the time of the filing of its complaint in May 2001, rather than from November 1, 2003. Otherwise, it asserts, the residents are not made whole. Chateau Estates contends that the Association was not entitled to such a retroactive award because it had failed to present evidence on damages and had not objected to the trial court's failure to award damages in the first appeal. The parties had agreed to the amount of the rent reduction, but their agreement apparently did not encompass a date upon which the reduction would go into effect. The Association did not pray for damages in its complaint.
 {¶ 27} When the magistrate incorporated the $13 rent reduction into his decision and order of November 19, 2003, he stated that the reduction was effective in November 2003. The Association filed objections to the magistrate's report, but it did not object to this timeframe. It only claimed that the order had not gone far enough in providing immediate relief for water usages such as bathing and laundry. By failing to object to the magistrate's recommendation with respect to the timeline, the Association waived this argument.
 {¶ 28} Moreover, based on the evidence presented, it would have been very difficult to quantify the residents' damages related to the water quality problems at Chateau Estates. The residents who began using bottled water started at various times, and some residents never did. Some used bottled water for their children but not for themselves. Some did not purchase alternate water, but got it from other taps, such as at the homes of relatives. Under these circumstances, the trial court could have reasonably decided to implement the rent reduction prospectively only.
 {¶ 29} The third assignment of error is overruled.
 {¶ 30} "The municipal court erred in failing to award reasonable attorney fees through the trial."
 {¶ 31} The Association sought attorney fees in the amount of $60,116.50 for the proceedings that preceded the prior appeal. On remand, the trial court awarded attorney fees in the amount of $10,000. It arrived at this award as follows:
 {¶ 32} Based on expert testimony, the trial court determined that a reasonable hourly rate in a municipal court case was $150 per hour for the lead attorney and $110 to $120 per hour for an associate. The trial court concluded that work performed by law clerks was not compensable as attorney fees because law clerks are not attorneys. Thus, the court deducted $3,584 sought for work done by the law clerk from the $60,116.50 fee request. The trial court appears to have accepted the total number of hours that the attorneys claimed to have worked, because it multiplied that number by the approved hourly rates to arrive at total fees incurred of $52,083.90. As it had done in its original calculation, the trial court then divided the total attorney fees by five — because the Association raised five claims — to arrive at a "rough calculation" of $10,416.78 in attorney fees. The court also considered expert testimony that a five day trial in municipal court should incur attorney fees of approximately $10,000. The court ultimately awarded attorney fees attributable to the water quality issue in the amount of $10,000.
 {¶ 33} There are several problems with the trial court's calculation. First, the trial court refused to award fees for a law clerk's work on the case. The trial court cited no authority for this position. The Eighth and Twelfth Appellate Districts have held that an award of "reasonable attorneys fees" under landlord-tenant law, R.C. 5321.15, properly encompassed the fees for the efforts of a legal intern on behalf of a tenant. Jacksonv. Brown (1992), 83 Ohio App.3d 230, 614 N.E.2d 847; RonScheiderer Assoc. v. London (Aug. 5, 1996), Madison App. Nos. CA95-08-022, CA95-08-024. Moreover, we gave tacit approval to the inclusion of fees attributable to a law clerk in Maze v. Maze
(July 22, 1985), Montgomery App. No. 9068. The Jackson court reasoned: "Given the recognition of legal interns by both the United States Supreme Court and the Ohio Supreme Court, * * * this court's compensation for the services of paralegals and law clerks, and a dearth of case law prohibiting their inclusion in an award for attorney fees, we find that an award for the efforts of a legal intern on behalf of a client is properly compensable as part of an award of attorney fees." We hereby expressly approve this holding. Thus, the trial court should not have excluded the fees attributable to a law clerk from the award of attorney fees.
 {¶ 34} Second, there is a mathematical error in the trial court's calculation. The fees attributable to the Association's lead attorney, the associate attorney, and the law clerk were broken down on Plaintiffs' Exhibit "F," wherein the Association sought $20,131.60 in fees specifically attributable to its lead attorney. The trial court arrived at the attorney fees for the lead attorney "by multiplying each of his charged hours by $150.00. This total amount was then deducted from the $20,313.60 [in fees for the lead attorney] shown on Plaintiffs' Exhibit `F.'" As a result of this calculation, the trial court reduced the lead attorney's fees by $4,448.60. However, the lead attorney billed 108 hours in this case, which, at a rate of $150 per hour, totals $16,200. Deducting $16,200 from the lead attorney's original fee of $20,313.60 should have led to a fee reduction of $4,113.60, not $4,448.60. Because of the trial court's manner of reaching its final award amount, however, this miscalculation was not significant.
 {¶ 35} The most important error in the trial court's calculation is the one we pointed out in the prior appeal. InChateau Estates I, we observed that a reduction in fees commensurate with the number of issues raised in the case "would be erroneous given the fact that the overwhelming majority of the time and attention of counsel in this case and at trial was devoted to the water safety issues." Nonetheless, the trial court again engaged in the precise type of calculation that we discredited in the prior appeal. It attempted to justify its decision, stating:
 {¶ 36} "The Plaintiffs prevailed on the maintenance of well and water systems and failed on the other four issues. It is easy in hindsight to focus on the maintenance of well and water systems. The other four issues were of great importance to the individual residents of the manufactured home park. The attorneys for Plaintiffs and the Plaintiffs themselves put substantial effort into developing evidence on the first four issues cited above. * * * [T]he failure to establish facts necessary to prevail on four of the issues, although substantially researched, prepared and presented by attorneys for Plaintiffs, are definite reasons not to hold the Defendants responsible for a large portion of the attorneys' fee incurred."
 {¶ 37} The record simply does not support the trial court's conclusion about the distribution of time and effort in this case, and we are disturbed by the court's obstinance on this issue. Even a cursory review of the record reveals that a large majority of the Association's case was devoted to the water quality at Chateau Estates. More than ten witnesses, including chemists, a toxicologist, and employees of the Ohio Environmental Protection Agency ("EPA") testified about this issue exclusively. The residents and employees who testified generally devoted at least half of their testimony to the water issue as well. It is evident from the testimony and documentary evidence presented at the hearing that the discovery process was likewise dominated by the water quality. Accordingly, the trial court erred in concluding that a "rough calculation" based on one-fifth of the attorney fees, or $10,416.78, was probative of the amount of attorney fees attributable to the issue of water quality.
 {¶ 38} We recognize that the trial court also relied upon expert testimony that a five-day trial in a municipal court "typically would merit something in the neighborhood of $10,000 in attorneys' fees." This testimony, coupled with the $10,416.78 fee that the trial court arrived at by dividing the total fee equally among the five issues presented, led the trial court to conclude that $10,000 was a reasonable attorney fee in this case. Yet the same expert who testified that a five day trial would typically merit $10,000 acknowledged that, at a rate of $150 per hour, $25,000 for a five day trial "would not be surprising." Moreover, we are quite certain that the amount of discovery necessitated by this case was not typical of a municipal court case. The presentation of the photographs that comprised much of the discovery on the other four claims is probably typical; the testimony of toxicologists and chemists on the water quality is probably not. Furthermore, the trial court seems to have accepted the number of hours that the Association's attorneys claimed to have worked on the case, because it relied upon those numbers in some of its calculations. By multiplying those hours by the approved rate, the trial court tacitly approved total fees in the amount of $52,083.90.
 {¶ 39} In sum, our assessment of the attorney fee issue is as follows: The trial court acted reasonably in setting the attorneys' hourly rates in accordance with normal municipal court practice, rather than in accordance with the rates of environmental attorneys. Although this case required extensive discovery, the environmental issues were not particularly complex. However, the trial court vastly underestimated the proportion of the attorneys' time that was devoted to the issue of water quality, and thus its calculation of attorney fees does not adequately reflect the amount of time spent on the water problems. Further, the trial court improperly excluded the fees attributable to the work of a law clerk.
 {¶ 40} In the previous appeal, we instructed the trial court that a simple division of the attorney fees by the number of issues presented was inadequate due to the fact that "the overwhelming majority of the time and attention of counsel in this case and at trial was devoted to the water safety issues."Chateau Estates I, supra. Notwithstanding our instructions, the trial court again relied on this type of calculation on remand As such, we are inclined to determine an award of attorney fees ourselves, to prevent further delay and litigation.
 {¶ 41} We will determine fees in accordance with the hourly rates approved by the trial court: $150 per hour for lead counsel and $115 per hour for an associate. The expert upon which the trial court relied also testified that he would equate a law clerk to a paralegal, and that a reasonable hourly rate for a paralegal is $75. We will accept this rate for the law clerk because the trial court found this expert to be credible and because this rate is proportionate to the rates charged for the attorneys. Our review of the record and of the expert testimony regarding the number of hours expended on this case leads us to conclude that the time spent on the case was reasonable.
 {¶ 42} In its Objections to Magistrate's Decision and Order on Attorneys' Fees and Testing Costs, the Association asserted that "more than sixty percent of the trial was devoted to water quality issues." In our view, this assertion is quite conservative, and it is amply supported by the record. As such, we will assume that sixty percent of the fees were attributable to water quality issues for purposes of our calculations. Based on this percentage and the hourly fees adopted by the trial court, we will determine attorney fees in the amount of $9,720 for lead counsel ($150 per hour x 108 hours x .60), $24,025.80 for associate counsel ($115 x 348.2 hours x .60), and $2,016 for the law clerk ($75 per hour x 44.8 hours x .60), for a total attorney fee determination of $35,761.80.
 {¶ 43} The fourth assignment of error is sustained.
 {¶ 44} "The municipal court erred in failing to include expert witness costs in the attorney fee award."
 {¶ 45} The Association asserts that the trial court should have included the amount that it paid to its expert witness — approximately $14,800 — in its award of attorney fees to the Association because the expert's testimony was necessary to prove the toxic nature of the park's water and the expert witness fee was reasonable. Chateau Estates responds that there is no statutory authority for awarding expert fees and that the Association did not raise this issue in the prior appeal relating to the award of attorney fees.
 {¶ 46} The Association's sole argument with respect to its entitlement to expert witness fees is that the expert's testimony was essential to its case. While this may have been true, it does not provide a sound rationale for classifying expert witness fees as attorney fees. The Association has cited no authority for the treatment of expert witness fees as attorney fees in this type of a case. In our view, the ordinary meaning of "attorney fees" does not encompass expert witness fees. The importance of an expert to the case does not change the character of attorney fees, and only attorney fees are provided by statute. R.C.3733.11(I). Although we are not unsympathetic to the Association's argument, we are limited to considering fees only where there is an express authorization of the General Assembly or whether there is a finding that the losing party has acted egregiously. Westfield Cos. v. O.K.L. Can Line (2003),155 Ohio App.3d 747, 758-759, 804 N.E.2d 45, 53-54.
 {¶ 47} The fifth assignment of error is overruled.
 {¶ 48} "The municipal court erred in failing to address the merits of appellants' motion for additional attorney fees."
 {¶ 49} The Association contends that its request for additional attorney fees, reflecting post-trial proceedings in the trial court and the prior appeal, should have been granted. Chateau Estates claims that the Association did not object to the magistrate's failure to award additional fees, that the Association improperly sought relief pursuant to Civ.R. 60(B) where no final judgment had been entered, and that additional fees exceeded the scope of our remand
 {¶ 50} The Association filed objections to the magistrate's report and recommendation three days after it was filed, so Chateau Estates's position that the Association has waived this argument is without merit.
 {¶ 51} We turn to the trial court's refusal to award additional attorney fees pursuant to Civ.R. 60(B). The Association concedes that Civ.R. 60(B) was not the proper means by which to request additional relief because no final judgment on the issue of attorney fees had been entered in the case when the motion was filed. Indeed, this is the precise basis upon which the trial court denied the request, stating: "The Court finds, as a matter of law, there is no final judgment entry of this court on attorneys fees and the issue of attorneys fees is currently pending objection hearing before the trial court. IT IS THEREFORE THE DECISION AND ORDER of the magistrate that the Plaintiff's motion for relief from a non-existent judgment and for additional attorneys fees is overruled." The Association invited this result by relying on Civ.R. 60(B). Thus, the trial court properly concluded that Civ.R. 60(B) was not the appropriate means for the relief sought by the Association.
 {¶ 52} As an aside, we note that we do not understand the parties' focus on Civ.R. 60(B) as a means to obtain attorney fees. R.C. 3733.11(I) provides for reasonable attorney fees where a tenant or owner obtains a judgment against a park operator for a violation of R.C. 3733.11(A)-(H). It seems to us that a party need only file a motion for attorney fees in the trial court to avail itself of this provision, and that Civ.R. 60(B) is not the normal means by which a party would obtain such an award, as the Association suggests. Thus, while it did employ an improper procedural device, the Association is within it rights to ask for additional attorney fees reflective of the appeal and the trial court proceedings necessitated by our remand It may do so by motion in the trial court.
 {¶ 53} The sixth assignment of error is overruled.
 {¶ 54} "The common pleas court erred by dismissing appellants' complaint in Case No. 04-cv-0107."
 {¶ 55} This argument relates to the common pleas court's dismissal of the Association's complaint that Chateau Estates had illegally transferred its assets to Helen, LLC, on the ground that it had failed to state a claim upon which relief could be granted. The Association complains that the trial court erred in treating the motion to dismiss as a motion for summary judgment without proper notice, in violation of Civ.R. 12(B).
 {¶ 56} A trial court may only grant a Civ.R. 12(B)(6) motion to dismiss when it appears beyond doubt that the non-moving party can prove no set of facts which would entitle him to the requested relief. See York v. Ohio State Highway Patrol (1991),60 Ohio St.3d 143, 144, 573 N.E.2d 1063. The court's examination should concentrate solely on the complaint as no factual findings are required. See State ex rel. Drake v. Athens County Bd. ofElections (1988), 39 Ohio St.3d 40, 41, 528 N.E.2d 1253. "When a motion to dismiss for failure to state a claim upon which relief can be granted presents matters outside the pleading and such matters are not excluded by the court, the motion shall be treated as a motion for summary judgment." Civ.R. 12(B). When a motion to dismiss is to be treated as a motion for summary judgment, all parties shall be given reasonable opportunity to present all materials made pertinent to such motion by Civ.R. 56. Id.
 {¶ 57} In its judgment entry, the trial court plainly stated that it had considered the affidavit attached to the motion to dismiss. In so doing, the court treated the motion to dismiss as a motion for summary judgment without proper notice to the Association and without providing the Association with an opportunity to present its own evidentiary materials. Thus, the trial court erred in granting the motion to dismiss.
 {¶ 58} We further note that, based on our review of the complaint, it does not appear that the issues raised can be resolved on a motion to dismiss. The testimony of Albert J. Turner, III in the trial court called into question Chateau Estate's ability to pay or obtain financing for the improvements that might be necessary to the water system. If, under these circumstances, Chateau Estates transferred assets to another without adequate consideration, as alleged in the complaint, there would appear to be a justiciable issue as to the fraudulent nature of that transfer. This would be so particularly if Turner and his father have a propriety interest in both Chateau Estates and Helen and retain possession and control of the property, as alleged in the complaint. Moreover, we fail to see how the court could determine whether Chateau Estates had sufficient assets to remedy the water quality when Chateau Estates's eligibility to participate in the EPA program, and thus, the cost of installing the filtration system, had not yet been resolved. Finally, we note that claims of fraud are very fact-sensitive and will not often be capable of resolution on a motion to dismiss.
 {¶ 59} The trial court erred in granting the motion to dismiss.
 {¶ 60} The seventh assignment of error is sustained.
 {¶ 61} The judgment of the municipal court in Case No. 2001-CVH-1647 will be affirmed in part and reversed in part. We will remand this matter to the trial court for it to enter judgment for an award of attorney fees in the amount of $35,761.80 to be paid by Chateau Estates to the Association's attorneys. This amount encompasses fees incurred prior to the first appeal and does not preclude the trial court from awarding additional fees relevant to the first appeal or to the trial court proceedings necessitated by our earlier remand, upon motion by the Association. The trial court will continue to monitor the water quality and the implementation of a long-term solution to the water problem. The judgment of the court of common pleas in Case No. 2004-CV-0107 will be reversed, and the matter remanded for further proceedings.
Fain, P.J. and Brogan, J., concur.
[1] This number comes from the Client Fees Listing provided as an exhibit at the hearing on attorney fees. We recognize that the Association had originally sought fees in a different amount. The reason for the discrepancy is not entirely clear, but we will focus our analysis on the Client Fees Listing, as the trial court did.