### NON-EMPLOYEES OF CHATEAU ESTATES RESIDENT ASSOCIATION et al., Appellants,

v.

### CHATEAU ESTATES, LTD. et al., Appellees.

[Cite as *Non-Employees of Chateau Estates Resident Assn. v. Chateau Estates, Ltd.*, 162 Ohio App.3d 453, 2005-Ohio-3739.]

Court of Appeals of Ohio,
Second District, Clark County.

Nos. 2005-CA-02, 2005-CA-5 and 2005-CA-33.

Decided July 15, 2005.

454

Daniel C. Harkins and Thomas C. Busam, for appellants.

John R. Ruffolo and Barry W. Mancz, for appellees.

BROGAN, Presiding Judge.

{¶ 1} This matter comes before the court upon three consolidated appeals by the Non–Employees of Chateau Estates Resident Association and numerous individual residents of the Chateau Estates mobile-home park.[1]

{¶ 2} The parties' legal dispute stems from complaints by the association about conditions at the mobile-home park. The crux of the dispute concerns the failure of appellee Chateau Estates, Ltd. to maintain the park's water system, resulting in elevated levels of iron and arsenic. In July 2002, the trial court held that Chateau Estates had violated R.C. 3733.10.[2] We affirmed the trial court's finding of a violation but remanded for clarification of the remedy. In December 2003, the trial court ordered Chateau Estates to provide residents with an alternative source of water via a rent reduction of $13 per person per month for the purchase of bottled water and further ordered that "a final permanent supply of potable water shall be made available * * * on or before December 31, 2004." We affirmed with regard to the remedy ordered but remanded for the entry of judgment on the issue of attorney fees.

{¶ 3} Thereafter, the association filed two motions in November 2004: (1) a motion for more immediate relief and (2) a motion for an order restricting rent increases. After hearing argument on the motions during a status conference, the trial court overruled them on December 3, 2004. The association has appealed this ruling in case No. 2005–CA–02.

---

1. The Non-Employees of Chateau Estates Resident Association is an unincorporated association comprised of residents of the mobile-home park. For purposes of our analysis herein, we will refer to the association and the individual residents collectively as "the association."

2. This statute provides in part that a park operator shall "[m]aintain in good and safe working order and condition all * * * well and water systems that are supplied or required to be supplied by him." R.C. 3733.10(A)(4).

{¶ 4} On January 7, 2005, the trial court filed an entry amending its earlier order requiring a permanent supply of potable water to be available by December 31, 2004. The trial court extended the deadline for installing a permanent water system to April 22, 2005. The association has appealed this ruling in case No. 005–CA–05.[3]

{¶ 5} On March 11, 2005, the trial court conducted another status conference. At that time, Chateau Estates moved for the release of certain rent payments on deposit with the court. Counsel for Chateau Estates asserted that the funds were needed to pay costs associated with the new water-filtering system. The trial court authorized the release of no more than $82,437. After hearing testimony from an individual involved in the water project, the trial court also extended its prior deadline and set a new target of mid-June 2005 for final installation of the system. The trial court addressed these matters in a March 28, 2005 journal entry. The association has appealed this ruling in case No. 2005–CA–33. We consolidated the three appeals.

{¶ 6} In the consolidated appeals, the association advances five assignments of error:

(1) The trial court erred in failing to provide an adequate remedy to appellants.

(2) The trial court erred in modifying appellants' judgment.

(3) The trial court abused its discretion and acted unreasonably by abridging and modifying the substantive rights of plaintiffs-appellants without due process of law.

(4) The trial court abused its discretion and acted unreasonably when it extended the deadline by which defendants-appellees must install a permanent effective remedy.

(5) The trial court abused its discretion and acted unreasonably by filing its March 28, 2005 order solely on the court's unsupported gratuitous statements and the testimony offered by a witness who was presented by defendants-appellees and for which plaintiffs-appellants were denied the opportunity to cross-examine.[4]

---

**3.** In addition to appealing from the trial court's orders of December 3, 2004, and January 7, 2005, the association challenged those rulings in a complaint for writs of mandamus and procedendo. We dismissed the complaint on April 27, 2005, finding that the present appeals constitute an adequate remedy at law.

**4.** The first two assignments of error are set forth in the association's appellate brief filed February 22, 2005. The last three assignments of error are contained in the association's April 29, 2005 supplemental appellate brief.

I

{¶ 7} The essence of the first assignment of error is that the trial court's failure to adhere to the original December 31, 2004 deadline for installing a new water-filtering system has deprived the association of an adequate remedy.

{¶ 8} In support of its argument, the association raises a variety of issues. It contends that periodic water tests continue to reveal elevated levels of iron and arsenic in the water at the mobile-home park. It also asserts that bottled drinking water is not an adequate remedy and that the $13 per-person, per-month rent reduction for the purchase of bottled drinking water is insufficient to allow the purchase of potable water for other activities. In addition, the association asserts that the record contains no evidence about the effectiveness of the proposed water-filtering system nor any evidence to justify a delay in completing the project. The association also insists that sufficient rent payments have been escrowed to enable the trial court to order immediate installation of a water-filtering system. Finally, the association asserts that the trial court has diluted the effect of the rent reduction by allowing Chateau Estates to impose periodic rent increases.

{¶ 9} Upon review, we find the association's first assignment of error to be unpersuasive. The remedial relief in this case fairly may be divided into three categories: immediate, intermediate, and permanent. For immediate relief from the toxic-water problem, the trial court approved the parties' own agreement for a $13 per-person, per-month rent reduction to allow the purchase of bottled water for drinking. For intermediate relief, the trial court ordered periodic testing of the water quality and flushing of the existing water system. For permanent relief, the trial court ordered Chateau Estates to install a filtration system to remove iron and arsenic from the water. As noted above, the trial court's original installation deadline was December 31, 2004.

{¶ 10} In hindsight, it is evident that the trial court's first deadline was an overly optimistic one. While we are sympathetic to the association's frustration with the delays that have occurred, we cannot agree that the trial court has deprived the association of an adequate remedy. The immediate relief in this case—a rent reduction for the purchase of bottled drinking water—was granted at the parties' request and pursuant to their own agreement. As for the claim that $13 per person is inadequate to cover the cost of water for activities other than drinking, we rejected the same argument in a prior appeal. See *Non–Employees of Chateau Estates Resident Assn. v. Chateau Estates, Ltd.*, Clark App. Nos. 2004CA19 and 2004CA20, 2004-Ohio-3781, 2004 WL 1587234, at ¶ 23.

{¶ 11} Moreover, we cannot agree that Chateau Estates has improperly diluted the effect of the $13 per-person, per-month rent reduction by imposing periodic

rent increases. In its December 2003 order granting the rent reduction, the trial court expressly authorized Chateau Estates to impose "normal" rent increases. In its appeal from that ruling, the association did not challenge the trial court's authorization of rent increases. It appears to us that the rent increases at issue reasonably may be characterized as "normal." In both 2003 and 2004, Chateau Estates raised the rent $12 per month. The record reflects that all tenants received the same increase, regardless of whether they were participants in this litigation. Upon review, we cannot say that the trial court abused its discretion in allowing such periodic rent increases. Despite the increases, the fact remains that association members still are paying $13 per person per month less than they would be if the rent reduction were not in place. As a result, they have not been deprived of this remedy.

{¶ 12} As for the intermediate relief ordered, we note that periodic testing and flushing of the water system continues to occur. Although the parties dispute the effectiveness of the flushing program, the association's complaint that toxins remain in the water simply demonstrates the continued need for permanent relief. On that issue, which forms the crux of the association's complaint, we cannot agree that the association has been deprived of a remedy. With regard to the delays that have occurred in installing a water-filtration system, we recently observed:

{¶ 13} "Respondent Kessler has entered final judgment in the trial court matter and it appears that he is attempting to execute that judgment within the bounds of reasonableness. The dispute between the Relators and Chateau Estates, Ltd. has been on-going for many years. However, during the time since final judgment, the Relators have twice appealed the matter to this Court and both parties made efforts to appeal to the Supreme Court of Ohio. These actions have obviously delayed execution of the final judgment. Additionally, although the trial court set a deadline for completion of the new water/filtration system for Chateau Estates, the Respondent Kessler subsequently determined, based on the information he had before him, that Chateau Estates, Ltd. would not be able to meet the deadline. The Relators have not sufficiently argued that the extension of the deadline by several months was unreasonable or an abuse of the Respondent's discretion given the circumstances of this case." *State ex rel. Non–Employees of Chateau Estates Resident Assn. v. Kessler* (Apr. 27, 2005), Clark App. No. 2005 CA 1, at ¶ 7.

{¶ 14} We do not dispute the association's argument that the foregoing language was dicta, given our dismissal of their original action on other grounds. But we continue to believe, as we did then, that the trial court's extension of the deadline for completion of the water-filtration system is not an abuse of discretion. Contrary to the association's argument that the record is devoid of

evidence to justify the delays that have occurred, the record indicates that they largely are attributable to delay in the federal government's selection of Chateau Estates as a participant in its pilot water-filtration program and, more recently, to regulatory oversight by the Ohio and United States Environmental Protection Agencies. Significantly, the trial court did not attribute any of the delay to inaction or "foot dragging" by Chateau Estates.

{¶ 15} In short, the record persuades us that the project is moving forward as quickly as possible—although understandably not as expeditiously as the association desires. In finding the delays that have occurred to be reasonable, we note too that no other form of permanent relief appears to be available any sooner. During oral argument in this matter, counsel for the association conceded that, as things now stand, it likely would be quicker to proceed with installation of the planned water-filtration system than it would be to pursue connecting the mobile-home park to the city water system. Thus, we are disinclined to order abandonment of the water-filtration system as a remedy due to the delays that have occurred.

{¶ 16} As for the association's additional argument that the effectiveness of the water-filtering system cannot be guaranteed, we do not disagree. For better or worse, however, the right of Chateau Estates to implement this system as a permanent remedy has already been established. See *Non–Employees of Chateau Estates Resident Assn. v. Chateau Estates, Ltd.*, Clark App. Nos. 2004CA19 and 2004CA20, 2004-Ohio-3781, at ¶ 16.

{¶ 17} Finally, we are unpersuaded by the association's argument that sufficient rent payments have been escrowed to enable the trial court to order immediate installation of a water-filtering system. Even assuming, arguendo, that sufficient funds have been escrowed, we are unpersuaded that immediate installation of *any* water-filtration system can take place given the need for substantial planning and design, construction, and regulatory oversight. The association's first assignment of error is overruled.

## II

{¶ 18} In its second assignment of error, the association argues that the trial court erred in modifying the judgment that it obtained against Chateau Estates.

{¶ 19} This assignment of error rests on the premise that the trial court made a December 3, 2004 finding that Chateau Estates *was not* in violation of its obligation to maintain the mobile-home park's water system as required by R.C. 3733.10. The association contends that this finding by the trial court contradicts a prior decision in which we found that levels of iron and arsenic in the water

violate R.C. 3733.10. As a result, the association argues that the trial court has impermissibly modified the existing judgment in this case.

{¶ 20} Upon review, we find the foregoing argument to be without merit. In the December 3, 2004 ruling at issue, the trial court overruled the association's motions for an order restricting rent increases and for more immediate relief. In its written decision, the trial court stated: "Contrary to the assertion of Plaintiffs, the Revised Code does not require the Defendant to provide 'clean' water." Similarly, during a December 3, 2004 status conference, the trial court stated: "The issue is not clean water. The issue is potable water, water that's fit, safe for human consumption." Seizing on these statements, the association appears to construe them as judicial findings that the mobile-home park's water system does not violate Ohio law.

{¶ 21} Although we are unsure what the trial court meant when it opined that Ohio law does not require Chateau Estates to provide "clean water," the trial court plainly did not find the existing water system to be in compliance with water-quality standards. Indeed, the overriding objective of this litigation has been, and remains, the installation of an effective water-filtering system. Absolutely nothing in the record before us indicates that the trial court has abandoned this objective based on a newly found belief that the levels of iron and arsenic in the water no longer violate Ohio law. To the contrary, the trial court's various journal entries reflect its continued pursuit of permanent relief for the association in the form of a new water-filtering system to rid the water of iron and arsenic. As a result, we are unpersuaded that the trial court has modified the association's judgment.

{¶ 22} The association also advances a number of other arguments under its second assignment of error. First, it contends that the trial court erred in failing to sanction Chateau Estates, Ltd. for failing to meet the original December 31, 2004 deadline for installing a water-filtering system. We disagree. As we explained above, the record supports the trial court's conclusion that the unfortunate delays are not attributable to any misconduct or inaction by Chateau Estates.

{¶ 23} The association next argues that the trial court should have conducted an evidentiary hearing before ruling on its motions to restrict rent increases and for more immediate relief. It cites no authority, however, for the proposition that a trial court must hold a full evidentiary hearing before ruling on a nondispositive motion. In addition, we note that the association attached various evidentiary materials to its motion for more immediate relief. The association's counsel also presented oral argument in support of the motions and proffered new water samples to establish that the mobile-home park's water remained discolored and full of sediment. Presentation of these samples was

unnecessary, however, because we previously found the water quality to be in violation of Ohio law and ordered the implementation of a permanent remedy. At this point, then, the issue before the trial court is simply the timing of the remedy, i.e., ensuring that the new water-filtering system is installed as expeditiously as is reasonably possible. The association has failed to identify any evidence, other than the bottles of discolored water, that the trial court precluded it from presenting. As a result, we find no merit in its argument regarding the lack of a true evidentiary hearing.

{¶ 24} The association also argues that the trial court (1) erred in finding periodic rent increases to be reasonable and (2) improperly distinguished between "clean" and "potable" water. We once again conclude, however, that the trial court did not abuse its discretion in finding across-the-board $12 per month rent increases to be reasonable. As for the distinction drawn between "clean" and "potable" water, we see no basis for reversal. The apparent point of the trial court's distinction was that the parties' agreement required Chateau Estates to reduce rent only so that "potable" water for drinking could be obtained. It did not require Chateau Estates to provide funds for the purchase of water for other activities. This conclusion is consistent with our ruling in a prior appeal. See *Non–Employees of Chateau Estates Resident Assn. v. Chateau Estates, Ltd.*, Clark App. Nos. 2004CA19 and 2004CA20, 2004-Ohio-3781, at ¶ 23.

{¶ 25} The association next challenges the trial court's decision to accept a project timetable supplied by Chateau Estates during the December 3, 2004 status conference. We note, however, that a primary purpose of the status conference was to enable the trial court to review the progress of the water-filtering project. In response to a question by the trial court, counsel for Chateau Estates cited a project schedule that had been completed by the E.P.A. and project engineers and that had been attached as an exhibit to Chateau Estates' memorandum in opposition to the association's motions. During the status conference, the association raised no specific objection to the timetable. Instead, it argued that the mobile-home park's water was still toxic, that the rent reduction was insufficient, and that escrowed funds were available to pay for a water-filtering system. None of these arguments called into question, or even addressed, the reasonableness of the timetable cited by Chateau Estates. Therefore, we find no abuse of discretion in the trial court's reliance on the timetable.

{¶ 26} The association also challenges the trial court's subsequent January 7, 2005 entry extending the water-filtration project deadline from December 31, 2004, to April 22, 2005. We find no abuse of discretion. The entry merely journalized the trial court's oral finding during the December 3, 2004 status conference that an extension until April 22, 2005, was reasonable and appropriate. Accordingly, we overrule the association's second assignment of error.

### III

{¶ 27} In its third assignment of error, the association contends that the trial court abused its discretion by abridging and modifying substantive rights without due process of law.

{¶ 28} Having reviewed this assignment of error, we note that it repeats arguments we have considered and rejected above. The thrust of the third assignment of error is that the trial court abused its discretion by extending the original December 31, 2004 deadline for completion of the water-filtering project. The association perceives this extension as a violation of its rights. In support, the association argues that the mobile-home park's water remains toxic, that funds exist to install a new water system, and that the trial court could have required installation of some form of permanent relief before December 31, 2004.

{¶ 29} As set forth above, however, we do not believe that the trial court abused its discretion in extending the original deadline. The issues raised by the association fail to persuade us otherwise. We have no reason to doubt the association's claim of continued water toxicity. But that is precisely why permanent relief in the form of a new water-filtering system has been ordered. The only remaining question is the timing of that relief. Contrary to the implication of the association's appellate brief, the delays now occurring appear to be unrelated to any professed lack of funding by Chateau Estates. Insofar as the association suggests that Chateau Estates could have paid for a new water-filtering system without participating in the E.P.A.'s pilot program, such an argument, at this date, is immaterial given that participation in the pilot program has already been approved. As things now stand, pursuit of a water-filtering system through the E.P.A.'s pilot program appears to be the most expeditious way of providing permanent relief to the association's members. Accordingly, we find no abuse of discretion in the trial court's extension of the deadline. The association's third assignment of error is overruled.

### IV

{¶ 30} In its fourth assignment of error, the association contends that the trial court abused its discretion when it extended the deadline for installing a permanent and effective remedy.

{¶ 31} This assignment of error once again raises the association's claim that the trial court should not have extended the original deadline for installing a water-filtering system and should have sanctioned Chateau Estates for failing to meet the original deadline. For the reasons we already have explained, however, we find no abuse of discretion in the trial court's extension of the original deadline or its failure to sanction Chateau Estates for missing the deadline.

{¶ 32} The association next asserts that the trial court erred by finding, contrary to our ruling in a prior appeal, that the concentrations of iron and arsenic in the water supply do not violate R.C. 3733.10. As we explained above, however, the trial court plainly made no such finding.

{¶ 33} The association also argues that the trial court should have ordered the use of escrowed rent payments to obtain immediate installation of a water-filtering system. We reject this argument for at least two reasons. First, as we have explained, the record does not reflect that a lack of funding has caused the current delays. Rather, they appear to be attributable, at least in large part, to unavoidable regulatory oversight and planning requirements beyond the control of Chateau Estates. Therefore, even if the trial court released all of the escrowed funds, "immediate relief" would remain an impossibility. Second, we note that the trial court in fact has ordered the release of escrowed funds to pay costs associated with the water-filtering project as they accrue.

{¶ 34} Finally, the association contends that the trial court abused its discretion by sua sponte extending the water-filtering project deadline without allowing the association to present evidence or to cross-examine witnesses for Chateau Estates. After examining the record, however, we find no merit in this argument.

{¶ 35} The trial court first addressed the original December 31, 2004 deadline during a December 3, 2004 status conference. At that time, counsel for Chateau Estates advised the trial court that the approaching deadline would not be met and submitted a revised project schedule prepared by the E.P.A. and engineers involved in the project. The trial court found the revised timetable, which established an April 22, 2005 completion date, to be "reasonable." On January 7, 2005, the trial court journalized an entry officially extending the deadline to April 22, 2005.

{¶ 36} Thereafter, on March 11, 2005, the trial court held a second status conference. During the conference, the trial court ruled on certain motions, including Chateau Estates' motion for the release of $82,437 from escrow to pay expenses related to the water-filtering project. Before ruling on the motion, the trial court called John Eastman to the witness stand. Eastman is employed by a firm doing design work for the water-filtering system. Upon questioning from the trial court, he testified about the costs for which Chateau Estates sought the release of escrowed funds. The trial court then asked Eastman about the timetable for completion of the project. Eastman explained the various steps that remained to be completed and stated that the April 22, 2005 deadline was not viable. He then estimated that the project would be completed around June 30, 2005. Following this status conference, the trial court filed a March 28, 2005

journal entry authorizing the release of $82,437 from escrow and extending the project deadline to mid-June 2005.

{¶ 37} Although Chateau Estates never filed a formal motion to extend the project deadline, a primary purpose for the two status conferences was for the trial court to review the progress of the water-filtering project. Contrary to the association's argument on appeal, we do not find that the trial court abused its discretion by sua sponte extending the project deadline after it became apparent that the existing deadlines were unworkable.

{¶ 38} As for the trial court's preclusion of cross-examination or the presentation of evidence by the association, we also find no abuse of discretion under the facts of this case. By the time of the December 3, 2004 status conference, it was obvious that the rapidly approaching December 31, 2004 deadline would not be met. Consequently, the trial court reviewed and adopted a new timetable that had been prepared by the E.P.A. and project engineers. The trial court also heard arguments from counsel, but no witnesses testified. As a result, there is no cross-examination issue with regard to the December 3, 2004 status conference.

{¶ 39} With regard to the presentation of evidence, the only pieces of evidence proffered by the association but not admitted by the trial court during the December 3, 2004 status conference were recent water samples in bottles. The samples revealed that the mobile-home park's water remained discolored and full of sediment. As we explained above, however, the poor water quality had already been established long before the December 3, 2004 status conference. By then, the only remaining issue was the timing of a permanent solution (i.e., a water-filtering system) to remedy the problem. The association's bottles of discolored water had no bearing on the reasonableness of the new timetable offered by Chateau Estates. As a result, the trial court did not abuse its discretion in declining to admit them into evidence.

{¶ 40} We reach similar conclusions with regard to the March 11, 2005 status conference. The only witness at this conference was John Eastman, who was called to the stand and questioned by the trial court. His testimony primarily concerned (1) the costs for which Chateau Estates sought the release of escrowed funds and (2) the timetable for completing the project. After the trial court completed some questioning, counsel for the association sought an opportunity to ask some questions. The trial court denied the request without explanation.

{¶ 41} Upon review, we believe that a better course of action would have been for the trial court to allow cross-examination and to rule upon the appropriateness of individual questions, if necessary to maintain control of the proceedings.

But we find no prejudice to the association as a result of the trial court's blanket preclusion of cross-examination. On appeal, the association argues only that, if allowed, it would have questioned Eastman about the availability of water-filtration systems, outside of the E.P.A.'s pilot program, that could have been installed prior to the original December 31, 2004 deadline. By the time of the March 11, 2005 status conference, however, the availability or unavailability of such systems was immaterial because Chateau Estates' participation in the E.P.A. pilot program already had been approved by the trial court. Thus, it mattered not whether Chateau Estates possibly could have obtained a water-filtering system elsewhere. The time for challenging Chateau Estates' participation in the E.P.A. pilot program had long since passed.

{¶ 42} We are equally unpersuaded by the association's claim regarding its inability to present evidence during the March 11, 2005 status conference. The transcript of the proceeding reveals no proffer of any evidence that the association wished to have admitted. Likewise on appeal, the association cites no evidence that the trial court precluded it from presenting. As a result, we find the association's argument on this point to be without merit. The fourth assignment of error is overruled.

V

{¶ 43} In its fifth assignment of error, the association contends that the trial court abused its discretion "by filing its March 28, 2005 order solely on the court's unsupported gratuitous statements and the testimony offered by a witness who was presented by defendants-appellees and for which plaintiffs-appellants were denied the opportunity to cross-examine."

{¶ 44} This assignment of error concerns the trial court's extension of the project deadline from April 22, 2005 to mid-June 2005 based on the testimony of John Eastman. The association first argues that the trial court abused its discretion by disallowing cross-examination of Eastman. We fully considered and rejected this argument in our analysis above.

{¶ 45} The association also complains that the trial court asked Eastman a few questions after he had been excused from the witness stand and while he was standing behind counsel. These questions concerned Eastman's agreeing to provide the trial court with periodic status reports and explaining the best way for residents to self-flush their water lines. The association makes absolutely no attempt to explain how it was prejudiced by Eastman's location in the courtroom when he conveyed this information, and we see no prejudice.

{¶ 46} The association next accuses Eastman of contradicting his March 11, 2005 testimony in an April 14, 2005 letter in which he informed the trial court

of another possible delay. The contents of an April letter are not relevant, however, to our review of whether the trial court abused its discretion in extending the project deadline in March. At the time of the rulings underlying these consolidated appeals, the April letter did not exist. Therefore, we decline to consider it.

{¶ 47} In a final argument, the association contends that the trial court abused its discretion by relying on its own "feelings," "impressions," and "guess-work" to extend the project deadline to mid-June 2005. We are unpersuaded. A review of the March 11, 2005 transcript reveals that the trial court relied on the testimony of John Eastman when it extended the project deadline. The trial court uttered the statements at issue in response to the association's request for sanctions against Chateau Estates, Ltd. for the project delays that had occurred. In particular, the trial court stated:

{¶ 48} "Well, if Chateau Estates were doing nothing and were dragging their feet, I would consider [sanctions]. However, it's my feeling and impression from talking to Mr. Eastman that the delay has come about as a result of problems with the U.S. EPA and I respect his testimony and think that it's true. And when you get into situations like this, it would be nice if they could move as rapidly and expeditiously as we project that they will, but they don't always do that. And I think this is, if Chateau Estates were in any way responsible for the delay, I would—I would lay it on them but I don't think they're responsible for the delay. I think it's the system and therefore, at this point in time, we will assess no penalties.  *  *  *

{¶ 49} "  *  *  *  I'm using my best judgment—and [in] my best judgment, the way we're going right now is the most expeditious way to go. If we waited until they went through the water system, if North Hampton extended the water system, my guess is that we're still another year and a half, two years down the road. This is a system that's proposed by the Environmental Protection Agency of the United States government. It's not just to benefit Chateau Estates. My guess is in Clark County that there are a lot of wells that have been drilled that have the same problem that Chateau Estates has and there are a lot of wells throughout this country, and this is based on my own experience. There are a lot of wells that have iron problems. And this will resolve them, hopefully, and if it's a successful program, it will benefit a lot of people in this county as well as people throughout the country; and I don't know of any way more expeditiously that we can handle it."

{¶ 50} Although the trial court's remarks may contain some dicta, the record supports its determination (1) that Chateau Estates is not responsible for the project delays and (2) that proceeding with the present course of action is the most expeditious way for the association to obtain permanent relief. We have

addressed both of these points elsewhere in this opinion, and we need not repeat that analysis here. The association's fifth assignment of error is overruled.

## VI

{¶ 51} Based on the reasoning set forth above, we hereby affirm the judgments of the Clark County Municipal Court.

Judgments affirmed.

YOUNG, J., concurs.

DONOVAN, J., dissents.

FREDERICK N. YOUNG, J., retired, of the Second Appellate District, sitting by assignment.

DONOVAN, Judge, dissenting.

{¶ 52} I disagree. The trial court ordered Chateau Estates, Ltd. to install a water-filtration system to remove arsenic and iron from the park's drinking water no later than December 31, 2004. This order is the result of findings that "the level of iron and arsenic present in the water are toxic to humans." Specifically, the condition of the water within the park violates R.C. 3733.10.

{¶ 53} In *Chateau Estates II*, we found that R.C. 3733.12 authorized the trial court to require Chateau Estates to remedy defective conditions within the park. Although a particular remedy was not mandated, clearly any remedy should be a timely one since we are addressing matters of toxicity to humans.

{¶ 54} It is axiomatic that deadlines should mean something. With a deadline approaching of December 31, 2004, the association filed a motion for more immediate relief on November 19, 2004. The trial court conducted a status conference on December 3, 2004, but refused to accept testimony or other evidence. On January 7, 2005, an entry was filed extending the deadline for appellees to install a permanent remedy from December 31, 2004 until April 22, 2005.

{¶ 55} There is no evidence in the record to justify this delay, nor is there any evidence to justify the statement that "the court finds this not to be an unreasonable delay and approves the timetable submitted by Defendant." The majority concludes that "[b]y the time of the December 3, 2004 status conference it was obvious that the rapidly approaching December 31, 2004 deadline would not be met. Consequently, the trial court reviewed and adopted a new timetable that had been prepared by the E.P.A. and project engineers." At this critical

juncture, the real issue was the "timing of a permanent solution (i.e., a water-filtering system) to remedy the problem," as the majority states.

{¶ 56} However, in order for the trial court to make any determination that delays were reasonable and/or unavoidable, it is equally "obvious" that evidence should have been adduced justifying the delay with a right of cross-examination by the association. The trial court relied upon a timetable attached to a memorandum filed by Chateau Estates. The timetable was neither authenticated nor testified to by any witness. Nor was the association given any opportunity to examine witnesses to discern whether any delay was attributable to the nonfeasance of Chateau Estates. It is easy to blame delays on governmental agencies such as the Ohio and U.S. E.P.A., but it is clearly wrong to presume their culpability, thus absolving Chateau Estates. As of January 7, 2005, there is absolutely no evidentiary material available that would support a conclusion that Chateau Estates is not in part responsible for the project delays. It is little more than pure conjecture to attribute the delay to bureaucratic regulatory oversight.

{¶ 57} Not only was it unreasonable for the trial court to deny the association an evidentiary hearing in December and January 2004, it likewise was unreasonable and arbitrary to deny it an opportunity to examine Eastman on March 11, 2005. This was the first time the court took any evidence on the timetable previously found to be "reasonable." Eastman was called by the court as its witness. In contravention of Evid.R. 614(A), the court did not allow the association to cross-examine him. The rule clearly states that "all parties are entitled to cross examine witnesses thus called." This is a clear denial of the association's right to be heard and constitutes an abuse of discretion. Not only was cross-examination of Eastman a "better course" as noted by the majority, it was a mandated course under the Ohio Rules of Evidence and due-process considerations.

{¶ 58} Fundamental to our system of justice for all litigants is the theory that conclusions will be reached only by evidence and argument in open court with full opportunity to be heard. The association was not afforded such an opportunity here. Lord Coke's age-old maxim "justice delayed is justice denied" should be applied. Water that has been found to be toxic to humans clearly prejudices the rights of the residents of Chateau Estates trailer park, who are likely to be persons of modest means with limited resources to relocate. Section 16, Article I of the Ohio Constitution provides, "All courts shall be open, and every person, for an injury done him in his land, goods, person or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." What is required clearly by due process of law is a fair opportunity to be heard. The record before us fails to establish that such an opportunity has been afforded the association.

{¶ 59} Accordingly, I would reverse and direct the trial court to conduct a full evidentiary hearing on Chateau Estates' failure to meet a mandatory and timely deadline for installation of a water-filtration system. I would also recommend the appointment of a special master with the necessary expertise to monitor this case to insure the expeditious installation of a water-filtration system and to help avoid further delays.