OPINION
{¶ 1} This matter comes before the court upon five consolidated appeals by the Non-Employees of Chateau Estates Resident Association and numerous individual residents of the Chateau Estates mobile-home park.[1]
 {¶ 2} The parties' legal dispute, which began more than five years ago, involves efforts by appellee Chateau Estates, Ltd. to remove elevated levels of iron and arsenic from the water provided to residents of its mobile-home park. This court has reviewed various aspects of the case in at least seven prior appeals, some of which were consolidated.[2] We have detailed the factual background of the dispute in our earlier rulings and need not repeat that discussion here. For present purposes, we note that the residents now have a new water-filtration system that allegedly is providing them with potable water. The efficacy of the new system, however, is the subject of another appeal, which has not been consolidated with the appeals now before us.[3]
 {¶ 3} In the five consolidated appeals that we now address, the Association advances the following assignments of error:
 {¶ 4} 1. "The trial court erred in failing to award reasonable attorney fees to Plaintiffs-Appellants for post-trial work."
 {¶ 5} 2. "The trial court erred in allowing fees to be paid out of the escrow account for Defendants-Appellees' expert witness."
 {¶ 6} 3. "The trial court abused its discretion by failing to set and enforce a definitive deadline by which Defendants-Appellees should eliminate the toxicity of water being provided to Plaintiffs-Appellants."
 {¶ 7} 4. "The trial court erred by issuing an order permitting Defendants-Appellees to deposit with the trial court, rather than pay Plaintiffs-Appellants' attorney fees and post-judgment interest as awarded by the trial court."
 {¶ 8} 5. "The trial court erred in holding that Defendants-Appellees were not in contempt for failing to collect and/or report water tests as previously ordered by the trial court."
 {¶ 9} For the reasons set forth below, we conclude that the trial court's $45,640.25 attorney-fee award to the Association for post-trial work was not an abuse of discretion. Although we agree that the trial court erred in allowing Chateau Estates to pay expert-witness fees out of an escrow account, we find the error to be harmless given that the trial court subsequently dissolved the account and returned the remaining balance to Chateau Estates. With regard to the Association's argument about the trial court's extension of project deadlines, we rejected the same argument and approved the same extensions in a prior ruling. Additionally, we find no merit in the Association's argument that the trial court allowed Chateau Estates to escrow an attorney-fee award to avoid the accrual of post-judgment interest. Nothing in the record indicates that the trial court has denied, or intends to deny, an award of post-judgment interest on the attorney-fee award. Finally, we find no error in the trial court's failure to hold Chateau Estates in contempt for not collecting and testing water samples for the month of December 2004. Accordingly, the trial court's judgment will be affirmed.
 I {¶ 10} The Association's first assignment of error concerns the trial court's decision to award it additional attorney fees of $45,640.25 for certain post-trial work pursuant to R.C. § 3733.10(B). The Association argues that the trial court improperly excluded from this award another $35,507.00 in attorney fees. Therefore, it contends the trial court's attorney-fee award for post-trial work should have been $81,147.25.
 {¶ 11} In support of its assignment of error, the Association argues that the trial court erred in denying attorney fees for 52 billing entries that reflected multiple activities by counsel, 31 billing entries that involved attorney-client communications, 64 billing entries related to post-trial appellate work, 10 billing entries involving activity in the Ohio Supreme Court, 27 billing entries for work on issues related to water quality at Chateau Estates, and 15 billing entries involving the preparation and review of objections to magistrate decisions.
 {¶ 12} Before turning to the merits of the Association's argument, we find it helpful to place the present attorney-fee dispute in some context. We resolved the first appeal in this case in Non-Employees ofChateau Estates Resident Assn. v. Chateau Estates, Ltd., Clark App. No. 2002-CA-68, 2003-Ohio-2514 ("Chateau Estates I"). Therein, we upheld a determination by a magistrate and the trial court that Chateau Estates had failed to maintain the park's water system, as required by R.C. § 3733.10, and that levels of iron and arsenic in the water were toxic to humans. We found a remand necessary, however, for the trial court to clarify an appropriate remedy. We also addressed the magistrate's and the trial court's award of trial-related attorney fees to the Association. We found an award of $8,100 to be unreasonably low. In reaching this conclusion, we noted that the trial court appeared to have reduced the award because the Association had prevailed only on one of several claims, namely the claim about the poor water quality. We found the reduction too drastic because most of the work in the case had related to that issue. We then remanded the attorney-fee issue, as we could not determine precisely how the fee award had been calculated.
 {¶ 13} On remand, the magistrate and trial court ordered a variety of short-term, intermediate, and long-term remedies for the water-quality problem. The magistrate and the trial court also found the Association entitled to attorney fees of $10,000 for trial-related work. InNon-Employees of Chateau Estates Resident Assn. v. Chateau Estates,Ltd., Clark App. Nos. 2004-CA-19 2004-CA-20, 2004-Ohio-3781("Chateau Estates II"), we reviewed the trial court's rulings on the remanded issues. Among other things, we approved the remedial measures implemented by the trial court. On the issue of attorney fees, however, we once again found that the trial court had failed to award the Association reasonable attorney fees for work performed through the trial at which a water-quality violation had been established. Rather than remanding the issue again, we resolved it ourselves, finding a fee award of $35,761.80 to be reasonable. In reaching this conclusion, we stated:
 {¶ 14} "In sum, our assessment of the attorney fee issue is as follows: The trial court acted reasonably in setting the attorney's hourly rates in accordance with normal municipal court practice, rather than in accordance with rates of environmental attorneys. Although this case required extensive discovery, the environmental issues were not particularly complex. However, the trial court did vastly underestimate the proportion of the attorneys' time that was devoted to the issue of water quality, and thus its calculation of attorney fees does not adequately reflect the amount of time spent on the water problems. Further, the trial court improperly excluded the fees attributable to the work of a law clerk.
 {¶ 15} "* * *
 {¶ 16} "In its Objections to Magistrate's Decision and Order on Attorneys' Fees and Testing Costs, the Association asserted that `more than sixty percent of the trial was devoted to water-quality issues.' In our view, this assertion is quite conservative, and it is amply supported by the record. As such, we will assume that sixty percent of the fees were attributable to water quality issues for purposes of our calculations. Based on this percentage and the hourly fees adopted by the trial court, we will determine attorney fees in the amount of * * * $35,761.80." Id. at ¶ 39, 42.
 {¶ 17} We then turned to an argument by the Association that the trial court had failed to award additional attorney fees for post-trial proceedings in the trial court and the prior appeal. We noted that the Association improperly had raised this issue via a Civ.R. 60(B) motion in the trial court, and we affirmed the trial court's refusal to consider it. We then added:
 {¶ 18} "As an aside, we note that we do not understand the parties' focus on Civ.R. 60(B) as a means to obtain attorney fees. R.C. §3733.11(1) provides for reasonable attorney fees where a tenant or owner obtains a judgment against a park operator for a violation of R.C. § 3733.11(A)-(H). It seems to us that a party need only file a motion for attorney fees in the trial court to avail itself of this provision, and that Civ.R. 60(B) is not the normal means by which a party would obtain such an award, as the Association suggests. Thus, while it did employ an improper procedural device, the Association is within itsrights to ask for additional attorney fees reflective of the appeal andthe trial court proceedings necessitated by our remand. It may do so bymotion in the trial court." Id. at ?52 (emphasis added).
 {¶ 19} While the appeal in Chateau Estates II was pending in this court, the Association presented us with a May 26, 2004, motion for attorney fees. Therein, the Association sought $17,863.50 in fees, of which $14,821.50 was attributable to the appeal in Chateau EstatesII and $3,042 was attributable to a failed mediation that had been conducted at the Association's request. Upon review, we made the following findings:
 {¶ 20} "* * * Here, the Association has provided us with specific documentation of the number of hours devoted to various aspects of this case, and we find these hours to be reasonable. We agree with Chateau Estates's expert, however, that not all of these hours are attributable to the appeal and mediation or to the issues on which the Association prevailed. In Chateau Estates II, we adopted the Association's estimation that at least sixty percent of the trial court proceedings had been devoted to water quality issues and, accordingly, our fee award reflected sixty percent of the attorneys' hours in the case. We will assume a similar portion of the time in this appeal was devoted to issues on which the Association prevailed. The most time consuming issue on which the Association prevailed was the issue of statutory attorney fees attributable to poor water quality, but the Association also prevailed on its claim that the common pleas court had improperly treated Chateau Estates's motion to dismiss the Association's complaint for the fraudulent transfer of assets as a motion for summary judgment. The Association did not prevail on the less complex issues related to rent abatement, delay, expert witness fees, and the action required by our previous remand. See Non-Employees of Chateau Estates Resident Assn.v. Chateau Estates, Ltd., Clark App. No. 2002-CA-68, 2003-Ohio-2514 ('Chateau Estates I'). On balance, we assume that sixty percent of the fees requested were attributable to issues upon which the Association prevailed, and we will again apply that number to our calculations.
 {¶ 21} "* * * Applying t[he] approved rates to the total hours billed would result in total fees in the amount of $11,220.50. In accordance with our discussion, supra, about the extent to which the Association prevailed on the appeal, we will award sixty percent of the total fees, or $6,732.30." See Sept. 16, 2004, Decision and Entry inNon-Employees of Chateau Estates Resident Assn. v. Chateau Estates,Ltd., Clark App. Nos. 2004 CA 19 2004 CA 20.
 {¶ 22} The foregoing rulings demonstrate that the Association already has received attorney fees for counsel's work leading up to the initial trial in which a water-quality violation was found and for counsel's work in connection with the second appeal. In response to our recognition in Chateau Estates II that the Association also was entitled "to ask for additional attorney fees" related to the initial appeal and the resulting remand, the Association filed a July 27, 2004, motion for additional fees in the amount of $135,284.08. (Doc. #369-370). The magistrate held a hearing on the motion on November 4-5, 2004. Following the hearing, the magistrate filed an April 15, 2005, decision and order awarding additional fees of $45,640.25. The trial court subsequently adopted the magistrate's decision awarding the Association additional fees of $45,640.25 "for post trial work, first Court of Appeals case work and Supreme Court work[.]" (Doc. #457).
 {¶ 23} On appeal, the Association initially argues that the trial court erred in excluding billing entries that reflected multiple activities by its counsel, some of which appeared to the magistrate to be compensable and some of which did not. The magistrate and the trial court refused to award attorney fees for such billing entries because they could not determine how much of the billed time was attributable to which activity.
 {¶ 24} In opposition to the trial court's ruling, the Association contends the law-of-the-case doctrine required an award of attorney fees for multiple-activity billing entries. In support, the Association argues that the magistrate previously awarded attorney fees for similar entries. The Association also contends this court itself previously "found that billing entries containing more than one activity were appropriately included in the [magistrate's award."
 {¶ 25} Upon review, we find no merit in the Association's argument that the law-of-the-case doctrine obligated the trial court to award attorney fees for billing entries that reflect multiple activities, some of which related to issues for which a fee award would be proper and some of which did not. In a prior decision awarding the Association attorney fees of $10,000 for trial-related work, it is true that the magistrate declined to make any "reduction in time" for billing entries that reflected multiple activities. (Doc. #271 at 5). Contrary to the implication of the Association's argument, however, the magistrate did not award attorney fees for all such entries. Instead, the magistrate declined to engage in an entry-by-entry analysis of the billing records at all and, instead, simply found the Association entitled to fees of $10,000 rather than the requested $60,116.50 because it had prevailed on only one issue out of five. (Id. at 5-6).
 {¶ 26} Similarly, we find somewhat misleading the Association's claim that this court "previously found that billing entries containing more than one activity were appropriately included in the Magistrate's award." In Chateau Estates II, the ruling to which the Association refers, we never directly addressed the issue. Instead of engaging in a line-by-line analysis of counsel's billing records, we accepted the proposition that "sixty percent of the fees were attributable to water quality issues for purposes of our calculations." Chateau EstatesII at ¶ 42. Nowhere in our ruling did we discuss the propriety of recovering attorney fees for billing entries that reflected multiple activities by counsel. Therefore, we reject the Association's argument that the law-of-the-case doctrine compelled the magistrate and the trial court to award attorney fees for such billing entries.
 {¶ 27} The Association next argues that the trial court improperly excluded various billing entries that involved attorney-client communications, billing entries related to post-trial appellate work, billing entries involving activity in the Ohio Supreme Court, billing entries for work on issues related to water quality at Chateau Estates, and billing entries involving the preparation and review of objections to magistrate decisions.
 {¶ 28} In order to review the Association's argument with regard to these entries, this court has read the entire 232-page transcript of the November 4-5, 2004, attorney-fee hearing before the magistrate. With a substantial investment of time, we also have examined each of the hundreds of entries in counsel's 79-page client ledger covering work performed in this case from April 1, 2002, through June 30, 2004. (Appellant's brief at Exh. C). Having done so, we cannot say that the trial court's award of additional attorney fees totaling $45,640.25 "for post trial work, first Court of Appeals case work and Supreme Court work" is an abuse of discretion.
 {¶ 29} In reaching this conclusion, we note that a number of the charges are not related to water-quality issues. With regard to many others addressed by the Association, the relationship of the charges to compensable water-quality issues is not apparent from the language of the billing entry. In other words, we simply cannot conclude from the brief language of the billing entry that the expense should be paid by Chateau Estates. In addition, some of the charges are related to issues on which the Association has not prevailed, and others the magistrate and trial court reasonably concluded were unnecessary. Determining the proper amount of an attorney-fee award admittedly is not an exact science, and, based on our review of the hearing transcript and counsel's billing ledger as a whole, we find no abuse of discretion in the trial court's award.[4]The Association's first assignment of error is overruled.
 II {¶ 30} In its second assignment of error, the Association challenges the trial court's decision authorizing Chateau Estates to use escrowed rent payments to pay expenses owed to John Eastman, who has assisted in the installation of the mobile-home park's new water-filtering system.
 {¶ 31} In support of this assignment of error, the Association advances two arguments. First, it claims Chateau Estates' debt to Eastman was for expert-witness fees. The Association asserts, however, that such fees are not an expense for which escrowed rent payments may be released under R.C. § 3733.123. Second, the Association argues that the law-of-the-case doctrine prohibited the trial court from releasing escrowed rent payments to pay Eastman's expenses. This argument is based on our finding in Non-Employees of Chateau Estates Resident Assn. v.Chateau Estates, Ltd., Clark App. Nos. 2004-CA-19 2004-CA-20,2004-Ohio-3781, that the Association was not entitled to an award of expert-witness fees as "attorney fees." The Association insists that the law-of-the-case doctrine mandates a similar result here.
 {¶ 32} Upon review, we conclude that the trial court did err in releasing escrowed rent for Chateau Estates to pay Eastman's bill. We also find, however, the trial court's error was harmless. The record reflects that residents of the mobile-home park were depositing their rent payments with the trial court, as authorized by R.C. § 3733.12(B), pending completion of the water-filtering project and their receipt of potable water. Another statute, R.C. § 3733.123, governs the partial release of escrowed rent. It provides:
 {¶ 33} "(A) If a park operator brings an action for the release of rent deposited with a clerk of court, the court may, during the pendency of the action, upon application of the park operator, release part of the rent on deposit for payment of the periodic interest on a mortgage on the premises, the periodic principal payments on a mortgage on the premises, the insurance premiums for the premises, real estate taxes on the premises, utility services, repairs, and other customary and usual costs of operating the premises."
 {¶ 34} Section 3733.123 specifies the types of expenses for which escrowed rent may be released during the pendency of an action, and the fees owed by Chateau Estates to Eastman do not fit within the scope of the statute. The record reflects that Eastman billed Chateau Estates for his appearances as a witness at status conferences conducted by the trial court. In our view, Chateau Estates' debt to Eastman was for expert-witness fees incurred as a part of this litigation. Expert-witness fees are not identified in the statute as an expense for which escrowed rent may be released. Accordingly, we conclude that the trial court should not have allowed Chateau Estates to use escrowed rent to pay Eastman's bill.
 {¶ 35} The trial court's error, however, was harmless. In another recent appeal, Non-Employees of Chateau Estates Resident Assn. v.Chateau Estates, Ltd., Clark App. No. 2006-CA-25, we affirmed the trial court's decision to discontinue the residents' escrowing of rent and to release the balance of the escrowed funds to Chateau Estates. We reached this conclusion after observing that Chateau Estates had completed the installation of a new water-filtering system at the mobile-home park. Given our determination in that case that Chateau Estates was entitled to receive the entire remaining balance of the escrow fund, the trial court's prior decision allowing some of the fund to be used to pay Eastman cannot have been prejudicial to the Association.
 {¶ 36} Finally, we find no merit in the Association's law-of-the-case argument. In Non-Employees of Chateau Estates Resident Assn. v. ChateauEstates, Ltd., Clark App. Nos. 2004-CA-19 2004-CA-20, 2004-Ohio-3781, we held that the Association 15 itself was not entitled to an award of expert-witness fees from Chateau Estates as "attorney fees." That ruling has no applicability here. In the matter now before us, Chateau Estates did not seek to have Eastman's expert-witness fees charged to the Association as attorney fees. Instead, it sought permission to have the fees paid with its own rental income, which had been escrowed by the trial court. Our prior ruling bears no similarity to the present situation. The Association's second assignment of error is overruled.
 III {¶ 37} In its third assignment of error, the Association contends the trial court failed to "set and enforce a definitive deadline" for Chateau Estates to provide its residents with potable water.
 {¶ 38} This assignment of error mentions two extensions of the trial court's original December 31, 2004, deadline for the installation of a new water-filtering system at the mobile-home park: (1) a January 7, 2005, extension of the deadline to April 22, 2005; and (2) a March 28, 2005, extension of the deadline to mid-June 2005. The Association argues that the trial court abused its discretion by extending these deadlines sua sponte and without justification.
 {¶ 39} This assignment of error lacks merit. We fully addressed the trial court's January 7, 2005, extension of the deadline to April 22, 2005, in a prior opinion and found no abuse of discretion. SeeNon-Employees of Chateau Estates Resident Assn. v. Chateau Estates,Ltd., Clark App. Nos. 2005-CA-02, 2005-CA-05 2005-CA-33,2005-Ohio-3739, ¶ 12-15, 25-26. In the same ruling, we also fully addressed the trial court's subsequent extension of the deadline to mid-June 2005 and found no abuse of discretion. Id. at ¶ 36-37.[5] The propriety of these extensions is res judicata, and we have no occasion to address them again.
 {¶ 40} Under its third assignment of error, the Association additionally contends that the trial court erred by incorporating into the record and relying on status reports from John Eastman. This argument concerns the trial court's overruling of a June 22, 2005, motion by the Association for Chateau Estates to show cause why it should not be held in contempt for failing to have a new water-filtering system installed by mid-June 2005. (Doc. #461).
 {¶ 41} The trial court held a hearing on the motion on July 15, 2005. During the hearing, the trial court considered testimony from John Eastman, who was subject to cross examination. Eastman advised the trial court that representatives of Chateau Estates had been "extremely cooperative" and had not delayed installation of the new system. (July 15, 2005, transcript at 17). On August 4, 2005, the trial court filed an entry overruling the Association's show-cause motion. In support of its ruling, the trial court stated:
 {¶ 42} "* * * Status conferences were held March 11, May 24, and July 15, 2005. At the March conference John Eastman was ordered to provide the Court and other parties with a monthly progress report. The reports were provided on April 14, May 11, June 9, and July 8, 2005. In addition, copies of the plans and letters to the EPA were also provided.
 {¶ 43} "The Court, on its own Motion, ORDERS that the April, May, June and July letters be admitted into evidence and made part of the record.
 {¶ 44} "The Court finds that Chateau Estates, Ltd, is not responsible for the project delays. With more than $250,000 of their [rent] money in escrow, they would be foolish to delay completion of the project.
 {¶ 45} "The Court finds the Defendants are not in contempt of Court for failing to meet the mid-June target date." (Doc. #477).
 {¶ 46} Upon review, we find no error in the trial court's decision to make Eastman's status reports part of the record. It is undisputed that Eastman regularly provided the trial court and the parties with copies of the reports, and he testified at periodic status conferences. Counsel for the Association was free to cross examine Eastman about the content of the reports at the July 15, 2005, status conference and hearing on the show-cause motion. Moreover, even without regard to the reports, Eastman's hearing testimony alone provided ample justification for the trial court to overrule the Association's show-cause motion and to find Chateau Estates not responsible for the project delays. Despite the Association's filing of several contempt motions, we see nothing to suggest that the project delays were attributable to anything Chateau Estates was doing or failing to do. Indeed, by the time of the July 15, 2005, hearing, it appears that the progress of the project was largely, if not completely, out of Chateau Estates' hands. At that point, timely installation depended on the actions of the E.P.A. and the company hired to install the new water-filtering system. Chateau Estates' role appears to have been limited to paying bills related to the project.
 {¶ 47} The Association next argues that the trial court violated its due process rights by conducting an unscheduled hearing on its motion to require Chateau Estates to show cause why it should not be held in contempt, thereby depriving the Association of an opportunity to present witnesses. This argument stems from a March 11, 2005, status conference during which John Eastman informed the trial court about the progress being made in installing the new water-filtering system. In his testimony, Eastman explained that the E.P.A. approval process and other things had held up completion of the project. He also told the trial court that the then-existing installation deadline of April 22, 2005 was "not at all realistic." (March 11, 2005, transcript at 5). In response to the trial court's request for a "reasonably accurate" estimated completion date, Eastman suggested June 30, 2005. (Id. at 6-7). At that point, the trial court expressed its belief that the project was moving along as rapidly as possible and that Chateau Estates was not responsible for the delays that had occurred. (Id. at 11-14). The trial court subsequently filed a March 28, 2005, entry in which it stated: "The Court finds that due to unavoidable problems the April 22nd deadline will not be met. Further, that the project should be ready for start up and shakedown by mid-June." (Doc. #427 at 1 ). The trial court then referred to mid-June 2005 as a "target date" for completion of the project. (Id. at 2).
 {¶ 48} On June 22, 2005, the Association filed a motion for an order directing Chateau Estates to show cause why it should not be held in contempt for failing to meet the "mid-June 2005 deadline" for installation of the new water-filtering system. The trial court took up the issue during its July 15, 2005, status conference with the parties. It first heard testimony from Eastman that E.P.A. approval had been received, that everything was ready to install, and that the new system was expected to be operational by September 15, 2005. The trial court then turned to the Association's show-cause motion, and the following exchange occurred between the court and counsel for the Association:
 {¶ 49} MR. HARKINS: "Your Honor, we were not, we have not prepared for a hearing on the motion. We were not aware that the court would — the past practice of this court on status conferences has been to restrict matters to the installation of it. We would ask for a continuance."
 {¶ 50} THE COURT: "Do you have anything you want to add?"
 {¶ 51} MR. HARKINS: "Your Honor, I don't know whether the court is going to accept the documents as attached to that. We would like the opportunity to present witnesses and obviously we're not prepared to do that."
 {¶ 52} THE COURT: "Will the witnesses add anything to what we already know? In other words, I'm not going to sit here and listen to a bunch of people testify about what we've already heard and what we already know. We already know the deadlines were set. We know the deadlines were not met, and that's what your issue is."
 {¶ 53} MR. HARKINS: "Yes, Your Honor."
 {¶ 54} THE COURT: "OK. And I will accept that as a stipulation. I don't think Mr. Ruffolo would object to it."
 {¶ 55} MR. RUFFOLO: "That is correct, Your Honor."
 {¶ 56} THE COURT: "So what more could you add?"
 {¶ 57} MR. HARKINS: "Your Honor, I believe that what would be appropriate would be opposing counsel in this court made statements in prior proceedings indicating that December 31 was going to be the absolute deadline. The witnesses that we would present at a hearing would indicate that there were sufficient funds available in the court to facilitate the purchase and installation — "
 {¶ 58} THE COURT: Know there's sufficient funds. There have been for a long time."
 {¶ 59} (July 15, 2005, transcript at 13-14).
 {¶ 60} The trial court then proceeded to hear additional testimony from Eastman. On direct examination, Eastman opined that representatives of Chateau Estates had been "extremely cooperative" and that Chateau Estates had done nothing to delay installation of the new system. (Id. at 17). On cross examination, counsel for the Association attempted to elicit testimony establishing that Chateau Estates could have purchased the new water-filtering system itself and could have met the court's earlier deadlines if it had not obtained the system through its participation in a special E.P.A. pilot program. The trial court limited this questioning, however, and stated:
 {¶ 61} "Mr. Harkins, I think you'll find that in one of my entries I made a finding that what they were doing was reasonable and to go along with the Ohio EPA. As I recall, that was the middle of last year or middle of `03. There were discussions, and I wanted something concrete by January of `04 or `05, I'm not sure when it was. And I felt that this demonstration project was important enough to go along with it. And there's no evidence that they have done anything between January and June 30th to delay or deny, slow down the process." (Id. at 26).
 {¶ 62} Following the foregoing hearing, the trial court filed an August 4, 2005, entry in which it overruled the Association's motion for an order directing Chateau Estates to show cause why it should not be held in contempt. On appeal, the Association contends it had no advance notice of the trial court's intent to address the contempt issue during the July 15, 2005, status conference. The Association further argues that this lack of notice constituted a prejudicial violation of its due process rights by depriving it of the opportunity to call witnesses.
 {¶ 63} Upon review, we find the Association's argument to be without merit. Based on our review of the July 15, 2005, transcript, it does appear that counsel for the Association lacked prior knowledge of the trial court's intent to address the show-cause motion. We note, however, that in the context of contempt, due process protections apply to Chateau Estates, the party alleged to be in contempt. Indeed, this court has recognized that "constitutional due process requires that a defendant charged with contempt — other than a direct contempt that is punishable summarily — be advised of the charges against him, have a reasonable opportunity to meet those charges by way of a defense or explanation, have the right to be represented by counsel, and have an opportunity to testify and call other witnesses in his behalf."Pirtle v. Pirtle, Montgomery App. No. 18613, 2001-Ohio-1539. Likewise, "[i]n cases of indirect contempt, R.C. § 2705.03 requires that a charge in writing be filed with the clerk of courts, with an entry thereof made upon the journal, and that the accused be given an opportunity to be heard, by himself or counsel." Id. Similarly, "R.C. § 2705.05 requires a court to hold a hearing on the charge, at which the court must investigate the charge, hear any answer or testimony that the accused makes or offers, and then determine whether the accused is guilty." Id. In State v. Bozsik, Medina App. No. 03CA0141-M, 2004-Ohio-4947, the Ninth District Court of Appeals recently found no authority that "provides the accuser with a due process right to be heard on his contempt charges and accusations." Id. at ¶ 10.
 {¶ 64} Even if the Association did have a due process right to prior notice that the trial court would consider its show-cause motion on July 15, 2005, we find no prejudice to the Association resulting from the lack of such notice. In an effort to establish prejudice, the Association argues that it was deprived of an opportunity to present witnesses. During the hearing, however, the trial court pointed out that the missed deadlines were an undisputed fact. It then asked counsel for the Association what relevant information his missing witnesses could add. Counsel indicated that his witnesses would testify about the fact that Chateau Estates has had sufficient funds to purchase and install a new water-filtering system on its own, apart from the E. P.A. pilot program in which it was participating.
 {¶ 65} As the trial court properly noted, however, the existence of sufficient funding by Chateau Estates to proceed outside the E.P.A. pilot program was undisputed. At the time of the July 15, 2005, hearing, it also was immaterial. We previously addressed the same issue inNon-Employees of Chateau Estates Resident Assn. v. Chateau Estates,Ltd., Clark App. Nos. 2005-CA-02, 2005-CA-05 2005-CA-33,2005-Ohio-3739. In that ruling, we stated: "* * *lnsofar as the Association suggests that Chateau Estates, Ltd. could have paid for a new water-filtering system without participating in the E.P.A.'s pilot program, such an argument, at this date, is immaterial given that participation in the pilot program already has been approved." Id. at ¶ 29. Therefore, the Association has failed to demonstrate any prejudicial error arising from its inability to call witnesses to support its show-cause motion. For the foregoing reasons, we overrule the Association's third assignment of error.
 IV {¶ 66} The Association's fourth assignment of error concerns the trial court's handling of certain attorney fees ordered to be paid by Chateau Estates. The assigned error is that the trial court improperly permitted Chateau Estates to deposit the attorney-fee award with the clerk of courts rather than to pay the award, with post-judgment interest, to the Association.
 {¶ 67} This assignment of error stems from a June 8, 2005, judgment entry by the trial court awarding the Association attorney fees for post-trial work in the amount of $45,640.35. (Doc. #457). Following the trial court's ruling, Chateau Estates filed a June 28, 2005, notice of escrow of attorney fees. (Doc. #468). In its notice, Chateau Estates stated: "Payment of $45,640.25 is being tendered herein to the Clerk. Upon release of the funds to Plaintiffs' counsel, the Defendant requests this Court to release Defendant from the judgment rendered on June 9, 2005 [sic], solely as to attorney fees." Accompanying the notice was a June 24, 2005, letter from Chateau Estates' counsel to the clerk of courts. The letter instructed the clerk of courts not to distribute the check if the Association appealed from the June 8, 2005, attorney-fee award. On June 24, 2005, the Association did appeal from the trial court's attorney-fee award for post-trial work. Thereafter, on July 18, 2005, the Association filed a praecipe for certificate of judgment in the amount of $45,640.25 plus interest. (Doc. #471). On August 2, 2005, Chateau Estates filed a second notice of escrow of attorney fees. (Doc. #474). This new notice made reference to an unidentified "telephone conference between counsel and the court." It also provided that a new check was being deposited with the clerk of courts in the amount of $45,640.25, made payable to the clerk of courts rather than the Association's counsel. On August 17, 2005, the Association withdrew its praecipe for a certificate of judgment. (Doc. #481). The withdrawal notice does not state the reason for the withdrawal. In any event, the trial court then filed an August 24, 2005, entry stating:
 {¶ 68} "The Clerk's office of Clark County Municipal Court is in possession of two checks from Attorney for Defendant, John M. Ruffolo. Check number 8097 is payable to Daniel C. Harkins Associates in the amount of $45,640.25, and check number 8108 is payable to Clerk of Courts in the same amount.
 {¶ 69} "Per the instructions of Judge William Kessler, check number 8097 payable to Daniel C. Harkins Associates is to be returned to Mr. John Ruffolo; and check number 8108 is to be deposited and held by the Clerk." (Doc. #484).
 {¶ 70} The Association has appealed from this entry directing check number 8108 to be held by the clerk of courts. As noted above, the assigned error challenges the trial court's decision allowing Chateau Estates to deposit the money with the clerk. The argument that follows, however, does not actually address the propriety of the clerk of courts holding the money. Instead, it addresses whether Chateau Estates' act of tendering a check for $45,640.25 to the clerk of courts tolls the accrual of post-judgment interest on the attorney-fee award. The Association frames the issue before us as "[w]hether the Trial Court may prevent the accrual of post-judgment interest on attorney fees awarded to Plaintiffs-Appellants by ordering that the money owed to Plaintiffs-Appellants be deposited with the Trial Court." The Association contends the trial court's "attempt to deny Plaintiffs-Appellants' statutory right to collect post-judgment interest on attorney fees awarded to them is ineffective as a matter of law." Therefore, the Association asks this court to "award post-judgment interest on the attorneys fees awarded to Plaintiffs-Appellants and deposited with the trial court."
 {¶ 71} Upon review, we find the Association's argument about the trial court denying post-judgment interest on the attorney-fee award to be premature and speculative at this point. Nothing in the record indicates that the trial court has denied, or will deny, the Association post-judgment interest or that its acceptance of Chateau Estates' payment to the clerk of courts was intended to toll the accrual of post-judgment interest. The issue of interest was addressed only in the Association's praecipe for a certificate of judgment, which it voluntarily withdrew without any ruling from the trial court. The post-judgment interest issue might have been discussed by the trial court and the parties in the unrecorded telephone conference mentioned above, but the record is devoid of evidence so indicating. On the record before us, then, we can conclude only that the clerk of courts is holding the $45,640.25 check pursuant to Chateau Estates' notice of escrow. The money apparently was not released because Chateau Estates deposited it with instructions for it to be held if the Association filed an appeal, which did occur. We presume that the money was being held by the clerk of courts pending the outcome of this appeal. Given that the appeal now has been decided, we see no reason for the money to be held by the clerk of courts.
 {¶ 72} As for the issue of post-judgment interest while the clerk retained the money in escrow, we cannot sustain the Association's assignment of error because, as explained above, nothing in the record indicates that the trial court ever denied an award of post-judgment interest or that it intends to do so. Thus, we cannot say that the trial court erred in denying the Association post-judgment interest for the period of time that the attorney-fee check was held in escrow. For present purposes, we simply note that a party awarded attorney fees ordinarily is entitled to post-judgment interest on those fees.Parker v. IF Insulation Co., 89 Ohio St.3d 261, 268, 2000-Ohio-151. We note too that an appeal by the prevailing party does not necessarily toll the accrual of post-judgment interest. Tabbaa v. Koglman, Cuyahoga App. No. 84539,2005-Ohio-1498, ¶ 38. Nor does the act of depositing a money judgment with the court pending appeal. Id. at ¶ 40. A party obligated to pay an attorney-fee award can stop "the accumulation of post-judgment interest by tendering full and unconditional payment of the judgment to the judgment creditor." Viock v. Stowe-Woodward Co.
(1989), 59 Ohio App.3d 3, paragraph two of the syllabus. "The law in Ohio stops the accrual of post-judgment interest only when the judgment debtor unconditionally tenders the money due and owing." Swayze v.Scher (Jan. 18, 1995), Montgomery App. No. 14310 (citations omitted). When a judgment debtor tenders payment on the condition of no appeal being filed by the judgment creditor, "the tender is not unconditional, and thus does not toll accumulation of the post-judgment interest."Krauss v. Kilgore (July 26,1999), Butler App. No. CA99-02-031. In any event, because nothing in the record indicates that the trial court has denied post-judgment interest or that it will do so in the future, we overrule the Association's fourth assignment of error.
 27 1. V {¶ 73} In its final assignment of error, the Association claims the trial court erred in failing to hold Chateau Estates in contempt for not collecting and testing water samples in December 2004.
 {¶ 74} This assignment of error stems from a February 2004 order directing Chateau Estates to engage in monthly flushing of the mobile-home park's water system and testing of water samples. Specifically, the order provides in part:
 {¶ 75} "IT IS THEREFORE ORDERED by the Court that directional flushing shall occur monthly until further order of the Court, as long as weather and freezing temperatures allow. IT IS FURTHER ORDERED by the Court that water collection and testing shall occur on a monthly basis until further [sic] of the Court and that such collection of water shall be drawn as near as possible to two weeks before or after the scheduled directional flushing each month." (Doc. #305).
 {¶ 76} The record reflects that Chateau Estates provided the Association with test results for water samples collected in November 2004 and January 2005 but not December 2004. As a result, the Association moved to compel disclosure of test results for the missing month or, alternatively, for an order directing Chateau Estates to show cause why it should not be held in contempt for violating the February 2004 order quoted above. (Doc. #432).
 {¶ 77} In response, Chateau Estates filed a memorandum in which it explained that the missing test results did not exist because no water samples were collected in December 2004. (Doc. #451). Attached to the memorandum was a photocopy of a Springfield News-Sun article indicating that approximately ten inches of snow fell in the area on December 22, 2004, and that a total accumulation of fifteen to twenty-three inches of snow was expected by the afternoon of December 23, 2004. The article also included a quote from a city official advising residents not to "go out." In addition, the memorandum included an affidavit from Chateau Estates representative Albert Turner addressing the failure to collect water samples in December 2004. In relevant part, Turner averred as follows:
 {¶ 78} "3. Following the flushing that occurred on or about December 9, 2004, the drawing of water was scheduled for December 23, 2004.
 {¶ 79} "4. Kevin Miller was unable to come to Chateau Estates Mobile Home Park to conduct the drawing of water due to the snow, freezing temperatures and other hazardous weather conditions.
 {¶ 80} "5. The snow, freezing temperatures and hazardous weather conditions made it nearly impossible and unsafe to draw water from the valves installed under the mobile homes, including the potential rupture of plumbing at the residents' homes.
 {¶ 81} "6. Instead of disrupting the flushing schedule, I made a decision to continue with the flushing scheduled in January, 2005 and not delay the flushing for the drawing of water samples.
 {¶ 82} "7. Water samples were drawn on January 20, 2005."
 {¶ 83} In reply to Chateau Estates' memorandum, the Association argued that the missing water samples could have, and should have, been drawn during the week of December 27, 2004, when the weather was better. (Doc. #453). In an August 2005 ruling, however, a magistrate overruled the Association's motion, finding (1 ) that there were no test results to disclose because no water was drawn in December 2004 and (2) that Chateau Estates was not in contempt of court for failing to collect water for testing in December 2004. (Doc. #479).
 {¶ 84} The Association objected to the magistrate's ruling, noting that Chateau Estates once before had been found in contempt for failing to collect water samples in April 2004. The Association argued that the same result was appropriate for the December 2004 incident. The trial court disagreed and summarily approved the magistrate's decision and order finding that Chateau Estates was not in contempt for failing to collect water samples for testing in December 2004. (Doc. #507).
 {¶ 85} On appeal, the Association argues that the failure to collect water samples for testing constituted a direct violation of a court order and, therefore, should have been punished through a contempt finding. According to the Association, the trial court's failure to make a contempt finding "constituted a denial of justice contrary to the requirements of the Ohio Constitution and Section 2705.02 of the Ohio Revised Code," which identifies acts for which a person may be punished through contempt. The Association also asserts, with little explanation, that the law-of-the-case doctrine compelled the trial court to make a contempt finding against Chateau Estates.
 {¶ 86} Upon review, we find no merit in the Association's arguments. Contrary to the Association's position in the trial court, we find, as an initial matter, that the requested contempt sanction necessarily would have been criminal in nature. The distinction between civil and criminal contempt "is usually based on the purpose to be served by the sanction." State ex rel. Com v. Russo, 90 Ohio St.3d 551, 554,2001-Ohio-15. "Civil contempt sanctions are designed for remedial or coercive purposes and are often employed to compel obedience to a court order. Criminal contempt sanctions, however, are punitive in nature and are designed to vindicate the authority of the court. Thus, civil contempts are characterized as violations against the party for whose benefit the order was made, whereas criminal contempts are most often described as offenses against the dignity or process of the court." Id. at 555 (citations omitted).
 {¶ 87} Here Chateau Estates complied with a court order requiring water collection and testing with regard to November 2004 and January 2005 but failed to conduct the collection and testing required in December 2004. When the Association moved for a contempt finding in April 2005, it could not possibly have been seeking remedial relief to coerce compliance with the collection and testing requirement for December 2004 because the relevant time period had expired. In our view, the purpose of a contempt finding as of April 2005 would have been to punish Chateau Estates for its earlier non-compliance and to vindicate the trial court's authority.[6]
 {¶ 88} In Denovchek v. Bd. of Trumbull Cty. Commrs. (1988),36 Ohio St.3d 14, however, the Ohio Supreme Court recognized a widely followed rule that "no right of appeal is available following an acquittal on the merits of a criminal contempt charge." Id. at 16 (citing cases); see also Contempt, 17 Ohio Jur.3d § 61 (citing Denovchek and recognizing that "[n]o statutory provision specifically authorizes appellate review of a refusal to punish for contempt, and the assumption underlying [R.C. § 2705.09] regarding the review of judgments of contempt appears to be that an appeal will be taken only in situations where the court finds a person in contempt"). In addition, absent prejudice to the movant as a result of a contempt motion being denied, the Ohio Supreme Court has determined that no right of appeal exists. Denovchek,36 Ohio St.3d at 17 ("Absent a showing of prejudice to the party making the contempt motion, contempt is essentially a matter between the court and the person who disobeys a court order[.]"); see also Schiesswohl v.Schiesswohl, Summit App. No. 21629, 2004-Ohio-1615, ¶ 12.
 {¶ 89} In the present case, Chateau Estates' non-compliance with the collection and testing order for one month in December 2004 raised a criminal contempt issue. When the contempt motion was filed in April 2005, no possible remedial or coercive relief could have provided the Association with the benefit of water-sample tests for the missing month. By that time, the missing tests raised an issue of the trial court's ability to vindicate its authority and to punish Chateau Estates for its earlier non-compliance with the collection and testing order. As the matter essentially was one between Chateau Estates and the trial court, we conclude that the Association has no right to appeal the denial of its contempt motion.
 {¶ 90} But even if the Association were able to appeal the denial of its contempt motion, we would find no abuse of discretion by the trial court. Chateau Estates provided the trial court with evidence establishing that a major snowstorm had hit the area the day before water was scheduled to be drawn for testing in late December 2004. Although the Association argued that Chateau Estates could have drawn the water after Christmas the following week, the trial court acted well within its discretion in accepting Chateau Estates' explanation and declining to make a finding of contempt.
 {¶ 91} Finally, we find no merit in the Association's claim that the law-of-the-case doctrine compelled the trial court to make a finding of contempt for the December 2004 violation. In support of its argument, the Association contends the trial court was operating under a mandate from this court to require monthly water collection and testing. The issue, however, is whether the trial court was required to impose a contempt sanction for a violation of that requirement. Although the trial court did make a finding of contempt on one prior occasion in April 2004, it was not compelled to do so again, under a different set of circumstances, in December 2004. The law-of-the-case doctrine has no applicability. The Association's fifth assignment of error is overruled.
 {¶ 92} Having overruled each of the Association's assignments of error, we hereby affirm the judgment of the Clark County Municipal Court.
FAIN, J., concurs.
[1] "The Non-Employees of Chateau Estates Resident Association is an unincorporated association comprised of residents of the mobile-home park. For purposes of our analysis herein, we will refer to the Association and the individual residents collectively as "the Association."
[2] See Non-Employees of Chateau Estates Resident Assn. v. ChateauEstates, Ltd., Clark App. No. 2005-CA-109, 2006-Ohio-3742;Non-Employees of Chateau Estates Resident Assn. v. Chateau Estates,Ltd., Clark App. Nos. 2005-CA-02, 2005-CA-05 2005-CA-33,2005-Ohio-3739; Non-Employees of Chateau Estates Resident Assn. v.Chateau Estates, Ltd., Clark App. Nos. 2004-CA-19 
2004-CA-20,2004-Ohio-3781; Non-Employees of Chateau Estates ResidentAssn. v. Chateau Estates, Ltd., Clark App. No. 2002-CA-68, 2003-Ohio-2514.
[3] See Non-Employees of Chateau Estates Resident Assn. v. ChateauEstates, Ltd., Clark App. No. 2006-CA-25.
[4] We are aware of the dissent' s concern about whether, or to what extent, the trial court considered various factors when making its fee award. In response, we note that the Ohio Supreme Court addressed this issue in Bittner v. Tri-County Toyota, Inc. (1991), 58 Ohio St.3d 143. In Bittner, the court noted that the first step in making a fee award is "to calculate the number of hours reasonably expended on the case times an hourly fee. " Id. at 145. The trial court did that in the present case. In a decision adopted by the trial court as its own, a magistrate applied the hourly rates previously established by this court to the number of post-trial hours the magistrate found to have been reasonably expended by the Association ` s counsel to defend and implement its judgment on water-quality issues. (Doc. #431 ). In determining how many hours were reasonably expended by the Association ` s counsel, the magistrate stated that he took into consideration the fact that the billing record "contains charges which have already been awarded to Plaintiffs by the Court of Appeals, charges not related to water quality issues and charges related to water quality issues but unreasonable or unnecessary." The magistrate then multiplied the hours reasonably expended by the applicable hourly rates and calculated an attorney-fee award of $45,640.25.
According to Bittner, a trial court then "may modify that calculation by application of the factors listed in DR 2-106(B)." Id. (Emphasis added). These factors include "the time and labor involved in maintaining the litigation; the novelty and difficulty of the questions involved; the professional skill required to perform the necessary legal services; the attorney's inability to accept other cases; the fee customarily charged; the amount involved and the results obtained; any necessary time limitations; the nature and length of the attorney/client relationship; the experience, reputation, and ability of the attorney; and whether the fee is fixed or contingent." Id. at 145-146.
Nowhere in its appellate brief does the Association contend the trial court should have modified its initial calculation by taking into consideration the additional factors cited by the dissent. Instead, the Association simply takes issue with the magistrate ` s threshold determination regarding how many hours were reasonably and necessarily expended on post-trial water-quality issues. The magistrate explained the basis for his conclusion on this issue in sufficient detail to permit appellate review. Therefore, we respectfully disagree with the dissent's position that it is impossible to conduct a meaningful review without a remand for findings on the additional factors cited above.
Finally, it may be patently obvious that most of the time and advocacy in this case, as a whole, has been devoted to water-quality issues. Based on our review of the record, however, it is not obvious to us that the overwhelming majority of the Association's counsel'spost-trial time has been spent pursuing matters that are both relevant and reasonably necessary to the limited issues remaining in this case or matters on which the Association has prevailed. While it is true that the Association obtained a judgment in its favor on water-quality issues at trial, it has prevailed on few issues since.
[5] "Parenthetically, we note that the new water-filtering system was not installed by the mid-June 2005 "target date" set by the trial court on March 28, 2005. We have addressed the failure to meet this target date, infra, in connection with the Association's argument about the trial court's denial of a show-cause contempt motion.
[6] We recognize that a contempt finding also might have had some deterrent effect, making clear to Chateau Estates the importance of conducting water-sample tests in the future. But deterrence, just like punishment or retribution, is a classic purpose of criminal sanctions. Moreover, even if a contempt finding might have deterred future violations by Chateau Estates, it would have done nothing to provide remedial relief to the Association for the December 2004 violation in this case.
DONOVAN, J. Concurs in part and dissents in part.